CARRIE M. MILLER *vs.* CHARLES H. WARD.

In Equity.

Penobscot.   Opinion October 6, 1913.

*Abandoned.   Account.   Agent.   Allegations.   Amendment.   Equity.*
*Expenditures.   Foreclosure.   Insurance.   Liens.   Loans.*
*Mortgage.   Possession.   Rents and Profits.   Tender.*

The defendant completed the work on the mortgaged house which the plain-
tiff had abandoned, and rented it.   The plaintiff claims that the defendant
had no authority to charge her with the expenditures so made.

1.   A mortgagee in possession should make necessary repairs and improve-
ments to prevent the property from waste, and if he neglects so to do,
upon redemption of the mortgage he may be charged with waste, and for
rents and profits that, with the exercise of reasonable care and attention,
he would have received from the mortgaged premises.

2.   The mortgagee has no authority to make the estate better at the expense
of the mortgagor, but is bound to use reasonable means to preserve the
estate from loss and injury.

3.   He cannot charge the mortgagor with expenditures for convenience or
ornament.

4.   He is entitled to allowance for all improvements and repairs necessary
for the preservation of the estate, or to make the premises tenantable.

5.   It was the duty of the mortgagee, having taken possession of the mort-
gaged property, with a house nearly finished, but untenantable, and left in
that condition by the mortgagor, to protect the interests of the mortgagor,
and that the finishing the house, thereby changing it from unproductive
property to rent producing property was proper management of the mort-
gaged premises by the mortgagee.

On report.   Bill sustained with costs.

This is a bill in equity in which the plaintiff seeks to redeem
certain real estate from a mortgage given to defendant by the plain-
tiff, dated September 3, 1908, for $1300, to be used in the erection
of a dwelling house.   On January 23, 1909, the defendant advanced
$600 in addition to the $1300 to plaintiff and took from her a second
mortgage on said property.   The plaintiff abandoned the house in
an unfinished and untenantable condition, and on March 8, 1909,

the defendant took possession of the premises and finished the house practically as the plaintiff had planned it. The mortgage for $600 became due January 23, 1910. In October, 1910, the plaintiff made a·demand upon the defendant for an account, of amount due on said $600 mortgage, and on October 27, 1910, defendant furnished the plaintiff with an itemized statement of amount claimed to be due on the mortgage, which included the amount of lien claims which defendant agreed to pay as the consideration for the $600 mortgage and also included the amounts paid out by him in finishing the house. December 1, 1910, plaintiff made a tender to defendant of $707.29 and demanded a discharge of the $600 mortgage, and the defendant refused to accept said tender. The defendant filed an answer to the bill and the plaintiff filed a replication. At the conclusion of the evidence, the cause was reported to the Law Court on so much of the foregoing evidence as is legally admissible; the Law Court is to determine all questions of law and fact, and render such judgment as the rights of the parties require.

The case is stated in the opinion.

*E. C. Ryder, and I. O. Bragg,* for plaintiff.

*Manson & Coolidge,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, HALEY, JJ.

HALEY, J. Bill in equity to redeem real estate from a mortgage given to defendant by the plaintiff, and reported to this court to determine all questions of law and fact to render such judgment as the rights of the parties require.

The first of September, 1908, the husband of the plaintiff applied to the defendant for a loan of money, to be used in the construction of a dwelling house, in Newport, which the plaintiff had begun to construct. The husband was at that time, and continued until after the defendant took possession of the premises in dispute, the agent of his wife as far as transactions concerning the property mortgaged were concerned. The husband represented that the house to be erected would be similar to a house pointed out by him to the defendant as costing about $4000. The defendant agreed to make the loan, and September 3, 1908, advanced to the plaintiff $1300 and took four promissory notes aggregating that amount and a mortgage of the real estate mentioned in the bill as security for the loan. The

mortgage contained, after the description of the mortgaged premises, the following: "Together with the buildings to be constructed and built thereon, and to cover all said buildings in process of construction, and the material as furnished for the same, and to cover said buildings when completed. The said sum is loaned said Miller to enable her to build said buildings, and is to be advanced from time to time as needed for the purpose, she to satisfy the said Ward that all lien claims are paid."

At the time of the loan the cellar for the house was completed, and some work done upon the frame. The plaintiff continued to work upon the house until late in December, 1908, or the first of January, 1909, when the work upon it was stopped. At that time the buildings were practically completed outside, but the outside doors were not hung and a number of windows had not been supplied. The first story was lathed and plastered, in the second story two rooms were lathed and plastered. In January, 1909, a number of creditors threatened to enforce their lien claim against the property, and the plaintiff furnished the defendant a list of those claims amounting, with an item for insurance, which had not been paid, to $597.40, and January 23, 1909, the plaintiff gave to the defendant her note for $600, and the defendant agreed to pay said claims, and at the same time the plaintiff secured the payment of said $600 note by a second mortgage of the same premises. March 8, 1909, the defendant took possession of the premises, purchased material, employed workmen and finished the dwelling house practically as plaintiff had planned it, the only change of importance being that he finished it for two tenements, an upstairs and a down stairs tenement, while the plaintiff intended to have but one tenement. The down stairs tenement was as the plaintiff had planned it; up stairs the plaintiff had planned to have a space divided by a partition and one part used as a bath room, and one part as a sleeping room. The defendant did not put up the partition dividing that space, but finished it as one room to be used as a kitchen. In completing the house the defendant purchased some of the material the plaintiff had selected, and purchased all material at reasonable prices.

The defendant completed the work upon the house and rented it April 1st, 1909, from which date he collected the rents from both tenements. The mortgage for $600 became due January 23, 1910, and the defendant began foreclosure proceedings by publication

February 10, 1910. In October, 1910, the plaintiff made a demand upon the defendant for an account of the amount due upon the $600 mortgage, and October 27, 1910, the defendant furnished the plaintiff an itemized statement of the amount claimed by him to be due upon said mortgage, giving credit for rents collected, showing a balance of $1207.17, which sum included the amount of the lien claims and an insurance bill not specified in the claims that the defendant agreed to pay as consideration for the mortgage of $600, and included the amounts paid out by him in finishing the house, and charges for the taxes and the foreclosure proceedings, and a commission of five per cent on the rents collected, interest on each of the items in the account for finishing the house, with a credit for the rents collected. December 1, 1910, the plaintiff made a tender to the defendant of $707.29, and demanded a discharge of the $600 mortgage. The tender included $600 as the principal of the mortgage, interest to the date of tender, taxes for 1909, the interest on the taxes, the attorney fee for foreclosing, and interest on the attorney fee. The defendant refused to accept said tender. Thereupon, the plaintiff brought this bill to redeem the premises from said $600 mortgage, and in the bill alleged a demand for an accounting, and a tender of the $707.29, and that that covered all there was due upon said $600 mortgage.

It is necessary to first determine whether the tender made by the plaintiff to the defendant was of a sufficient sum to reimburse the defendant for all he was entitled to receive as payment of the $600 mortgage. The tender did not include any money expended by the defendant in repairing or finishing the buildings after he took possession in March, 1909. The plaintiff claims that the expenditures by the defendant for that purpose were not authorized by her, and were not necessary repairs and improvements, and that the defendant had no right to charge her for them when she sought to redeem the premises from the $600 mortgage. If the defendant did not have that right, the tender was of a sufficient amount; if the defendant had that right, it was not of a sufficient amount. The testimony shows that when the defendant took possession of the premises water had run into the cellar and frozen, and the cellar wall was damaged by frost; that water did not run out of the cellar, because the sewer was not properly screened and had become

clogged, that the plastering, by reason of the cellar wall having been affected by the frost, had cracked to quite an extent, and that the defendant repaired those defects, and that in the finishing of the house he completed it as near as he could, with the exceptions above stated, namely, that of making one room in the second story where the plaintiff had intended to have a bath room and a sleeping room. No claim is made that the work was not done in a workmanlike manner, and at a reasonable expense, and the question is, had the defendant, as mortgagee in possession of the property, situated as this mortgaged property was, a right to make such repairs and improvements as were made to the property and charge the mortgagor therefor? The rule holding that the mortgagee in possession has no right to make improvements at the expense of the mortgagor, is a rule to protect the interests of the mortgagor, and to prevent the mortgagee from rendering it more difficult for the mortgagor to redeem the premises; but the rule holds the mortgagee in possession should make necessary repairs and improvements to prevent the property from waste, and if he neglects so to do, upon the redemption of the mortgage he may be charged with waste, and for the rents and profits that, with the exercise of reasonable care and attention, he would have received from the mortgaged premises, Jones on Mortgages, sec. 1123, not unnecessary repairs and improvements made for ornamentation or convenience, or to improve the property so that it is rendered more difficult for the mortgagor to redeem but repairs that are beneficial and necessary to the estate. "He has no authority to make the estate better at the expense of the mortgagor, but is bound to use reasonable means to preserve the estate from loss and injury. He cannot charge the mortgagor with expenditures for convenience or ornaments,  .   .   .   but he may properly, under some circumstances, go beyond this, and supply things that are wanting at the time of the entry; as where the doors or windows of a house are gone, he is justified in supplying these in order to put the estate in condition for occupation. What is a proper expenditure must depend upon the circumstances of each case." Ibid., sec. 26. As said by the court in *Bradley* v. *Merrill,* 88 Maine, 27: "He is entitled to allowance for all improvements and repairs necessary for the preservation of the estate, or to make the premises tenantable." The property in question at the time the

defendant took possession was not tenantable. The doorways were boarded up; no doors had been hung, twelve windows were lacking, the lower story was not finished, no upper floors had been laid in either story, only a small part of the second story had been lathed and plastered. In the few months it had been left in that condition the elements had injured the cellar wall, the plastering and cellar windows, and unless some work was done the property would rapidly depreciate in value. The plaintiff had invested at least $1900 in the buildings, and it was the duty of the defendant, being in possession, to so manage the property that the interest of the plaintiff would not further depreciate, and that he could only do by making repairs. If he made only such repairs as were rendered necessary by the frosts of one winter, the property would continue to depreciate in value, and further repairs would soon be necessary. To properly protect the interests of the plaintiff it was necessary to do something whereby the $1900 that the plaintiff had invested in the buildings and which was producing no income, would produce an income and the property cease to depreciate. In order to protect the plaintiff's interests, situated as this property was, it was necessary to make the house tenantable, there being no other way in which the property could be made to earn an income. By completing the house the defendant changed the property of the plaintiff, which was producing no income, into property producing an income of $284 per year.

We think that, by the rule stated in *Bradley* v. *Merrill,* supra, and authorities cited, it was the duty of the defendant, having taken possession of the mortgaged property, with a house nearly finished but untenantable, and left in that condition by the mortgagor, to protect the interests of the mortgagor, and that the finishing of the house, as the evidence discloses in this case and thereby changing it from unproductive property to income producing property, was proper management of the mortgaged premises, that such repairs and improvements were necessary and beneficial to the estate, *Rowell* v. *Jewett,* 73 Maine, 365; Jones on Mortgages, sec. 1129, and that the money expended, as shown in this case, was a proper charge against the property, which the plaintiff should pay, together with the mortgage debt, to redeem the property, and that the tender of $707.29 by the plaintiff in December, 1909, was not a sufficient

tender of the amount due the defendant upon the mortgage, and that the bill cannot be maintained upon the allegations in the bill of a tender of the amount due upon the mortgage.

Section 15 of chapter 92, R. S., provides that a mortgagee shall render a true account in writing of the sum due on the mortgage, and of the rents and profits, and money expended in repairs and improvements, if any, and if he unreasonably refuses or neglects such an account in writing, or, in any other way by his default prevents the plaintiff from performing or tendering performance of the conditions of the mortgage, the mortgagor may bring his bill for a redemption of the mortgaged premises. It is contended by the plaintiff that the defendant did not render a true account of the sum due upon the mortgage, as required by statute, that in the statement of the account furnished by the defendant there is an item under date of February 3, 1909, to paid Parks Brothers insurance, $31.65, and that that item is not a proper charge against the plaintiff or the mortgaged property. The mortgage given by the plaintiff to the defendant contained an agreement that the plaintiff would keep the property insured, and it appears in evidence that the plaintiff did procure from Parks Brothers insurance to the amount of $2500 upon said premises, and that the insurance was procured upon credit, and in the list of claims that made up the amount for which the second mortgage was given as security, that debt appears as $36.40 due for the insurance, and the defendant, when he accepted the second mortgage for $600, agreed to pay that bill with the others. He did not do so, but took out a new policy in his own name. It is claimed that the policy procured by the plaintiff was cancelled by the insurance agent by the authority of the plaintiff, but his right to do this is denied by the plaintiff and her witnesses, and the evidence does not prove that the plaintiff authorized the policy to be cancelled, and no notice was given as required by law, that justified the agent in cancelling it. The defendant agreed to pay the debt owed by the plaintiff for the policy procured by her. He did not pay the debt, and while he would undoubtedly have had the right, if the plaintiff had neglected to insure the property, to have procured insurance and charged it to the plaintiff in an accounting, because the mortgage contained a covenant that the plaintiff would keep the premises insured, yet, as the plaintiff had it insured and the policy

was never legally cancelled and as the defendant did not pay the debt of the plaintiff for the insurance which he agreed to pay, and which was a part of the consideration for the mortgage, that item was not a proper charge against the plaintiff in accounting for the amount due upon his mortgage; therefore, the defendant did not render to the plaintiff a true account of the amount due upon the mortgage, as required by statute, and the plaintiff would be entitled to maintain her bill for that reason if it contained the necessary allegations; but the bill contains no allegation that the defendant did neglect or refuse to render a true account of the amount due upon said mortgage; but as the account furnished the plaintiff by the defendant of the amount due upon the mortgage contained the item for insurance which was not a proper charge, the defendant did not render a true account in writing, as required. There being no dispute in regard to that fact, an allegation that the defendant neglected to render a true account would be supported by the evidence, and as the time to redeem the premises has expired, unless the plaintiff is allowed to amend her bill by inserting the allegation that the defendant did unlawfully refuse to account, she is without remedy, and it would seem just and proper that she be allowed to amend the bill by inserting the necessary allegations, upon such terms as the Justice who shall sign the final decree shall deem equitable. *Munro v. Barton,* 95 Maine, 262. After the amendment the defendant should account from the date of his former account to the date of the decree, the former account being taken as true, with the exception of the item charged for insurance, which should be deducted. The accounting may be had before the Justice who signs the final decree.

*Bill sustained with cost.*