[No. 17686.   Department Two.   October 2, 1923.]

ELTOPIA FINANCE COMPANY, *Appellant*, v. C. L. COLLEY, *Defendant*, FIRST NATIONAL BANK OF PASCO, *Respondent.*[1]

CHATTEL MORTGAGES (6)—DEBTS SECURED—FUTURE ADVANCES. A chattel mortgage upon crops for future advances to be made after the mortgage attached is valid.

SAME (31)—CONSTRUCTION—FUTURE ADVANCES. A second mortgagee, who, at the end of the year, treated the first mortgage upon crops as covering future advances, and settled on that basis, cannot thereafter be heard to say to the contrary.

SAME (40)—PRIORITIES—ADVANCES. A first mortgagee on crops who made advances absolutely necessary for the production of the crop is entitled in equity to credit therefor.

PEMBERTON, J., dissents.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered July 6, 1922, in favor of the defendant, in an action to foreclose mortgages, tried to the court. Affirmed.

*Chas. W. Johnson*, for appellant.

*Driscoll & Horrigan*, for respondent.

FULLERTON, J.—The Eltopia State Bank is a banking corporation, organized under the laws of the state of Washington. On October 26, 1918, it had on its books some four excess loans, which it had been re-

[1]Reported in 219 Pac. 24.

quired to reduce by the state bank examiner. These loans were made to farmers, and were severally secured by a mortgage on the personal property of the debtor. On the day named, the Eltopia bank wrote the First National Bank of Pasco, requesting it to take up one-half of each of the loans, promising in its letter to relinquish its mortgages and permit the national bank to take a first mortgage on the property, together with a first mortgage on the wheat crops to be grown by the debtors during the season of 1919, as security for that part of the loans taken up by it; promising, also, in the letter to advance such sums to the debtors as would enable them to prepare, seed and care for the crops during the growing season of 1919. The national bank agreed to this proposition on certain named conditions.

One of the debtors to the Eltopia bank was C. L. Colley, and as to his loan the agreement was carried out. One-half of Colley's indebtedness amounted approximately to $2,226.35, and for this sum the national bank took his notes, payable to itself, and took a first mortgage upon all his personal property and a first mortgage on his growing crop of wheat as security. Colley gave new notes for the remaining part of the indebtedness to the Eltopia bank; and, as security therefor, gave a second mortgage on the property covered by the mortgage to the national bank. Colley required considerable sums to finance his farming operations, and these the Eltopia bank could not or would not make. The national bank thereupon made the advancements, and the sums so advanced were recognized by the Eltopia bank as constituting a prior lien to the mortgage lien it held upon the property, and were allowed by it as prior liens in the settlement made with Colley after the close of the harvest in 1919.

The crops were a partial failure in the vicinity in which Colley was farming, and he did not realize sufficient from his crop to meet the advances made to him, and his debt to the national bank was materially increased. The banks thereupon entered into a similar agreement to that entered into in 1918. The Eltopia bank released its mortgage, the national bank took new notes for the existing indebtedness, and a first mortgage upon all of his personal property and upon his crops for the crop season of 1920, except the crop on one quarter section of land. The Eltopia bank also renewed its loan, and took a second mortgage on the personal property, a second mortgage on all of Colley's crops covered by the national bank mortgage, and a first mortgage on the quarter section named.

The mortgage of the national bank provided for future advances to Colley, and the bank did make to him large advances to enable him to perform his necessary farming operations in the year 1920. His crop, however, was again a partial failure, and enough was not realized thereupon to satisfy his obligations due the national bank. The Eltopia bank refused to enter into any arrangement for the year 1921, and the national bank financed Colley under an agreement made wholly with Colley. No release of record, however, was made of its mortgage executed in 1919.

In October, 1921, the Eltopia bank began the present action to foreclose its mortgage. It made the national bank a party defendant, and averred that the mortgage to the national bank had been paid, and that any claim that the bank had thereunder was subject and inferior to the lien of the plaintiff's mortgage. The national bank answered, setting out its mortgage of 1919 as a first and superior lien on the property described therein, to the extent of the amount due there-

on, which amount it alleged to be $3,307.65. The affirmative matter was put in issue by a denial, and on the issues thus made a trial was had before the court as a cause of equitable cognizance. During the course of the trial, it was made to appear that the Eltopia Finance Company had succeeded to all of the rights of the Eltopia State Bank, and it was, on the order of the court, substituted as the party plaintiff.

The trial court refused to make findings of fact or conclusions of law. In its decree, however, it recited that there was due and owing from Colley to the First National Bank the sum of $3,307.65, and that there was due and owing from Colley to the substituted plaintiff the sum of $1,944.56. It further recited that the mortgage of the bank was a first and superior lien for the amount found due on the property described in the mortgage. It decreed a foreclosure of both mortgages, ordered the mortgaged property sold, and directed that the proceeds be applied on the mortgage debt in accordance with its conclusion as to the priority of the mortgages. From the decree, the Eltopia Finance Company appeals.

Subsequent to the execution to it of the first of the mortgages mentioned, the First National Bank received the proceeds of all of Colley's crops, and the appellant's assignment of error raises the question whether it has properly accounted for such proceeds. The dealings extended over a period of time exceeding two years, the items are numerous, and the bank's ledger account, a copy of which is in the record, is but a series of figures showing debits and credits. If these are taken to be correct, the finding of the court as to the balance due it is also correct.

The appellant, however, challenges a number of these items on the debit side, particularly the items of

advances made for the culture and care of the crops, contending that all such advances made subsequent to the execution of the mortgage to the Eltopia bank are inferior and subject to the lien of the mortgage. But while there seems to be a conflict of authority on the question, this court has followed the rule that mortgages for future advances are valid, and that advances made thereunder are prior and superior to a subsequent mortgage, even though the mortgage attached prior to the time the advances are made. *Home Savings & Loan Ass'n v. Burton,* 20 Wash. 688, 56 Pac. 940; *Heal v. Evans Creek Coal & Coke Co.,* 71 Wash. 225, 128 Pac. 211.

In the first of these cases, the authorities on the question are somewhat extensively reviewed, and the conclusion was reached that the great weight of authority was in accord with the view there taken. We are satisfied with the rule announced, and conclude that there was no error in the holding that the first mortgage, to the amount of the original sum secured plus the advances, was a superior lien to the lien of the second mortgage.

The case of *Inland Trading Co. v. Edgecombe,* 57 Wash. 257, 106 Pac. 768, cited by the appellant, is not contrary to the cases above cited. In that case, the mortgage contained no provision for future advances, and it was held that, as against a junior mortgage, it was a lien only for the amount of the notes enumerated therein. The case, however, does seemingly approve the principle that a mortgage for future advances which leaves it optional with the mortgagee whether or not he shall make them, will be postponed to the lien of a junior encumbrance if made after knowledge that the junior mortgage attached. But this principle is not applicable here. As we read the record, there was

in this instance a positive agreement to make the advances.

The appellant, however, says that the rule we find controlling is without application to the first mortgage, since that mortgage did not contain a provision for future advances. But the answer to this is that the predecessor of the appellant, in the settlement with the respondent of their mutual accounts at the end of the crop season of that year, treated the mortgage as so providing. Manifestly, neither it nor its successor in interest, in view of the subsequent dealings, can now be heard to say, to the disadvantage of the respondent, that the mortgage did not so provide.

The gross returns for the quarter section of land on which the Eltopia bank held a first mortgage was $906.85. Of this sum, but $300 was paid to the Eltopia bank. The appellant claims that it was entitled to the remainder. But this remainder was expended in seeding, caring for, and harvesting the crop grown thereon. It was absolutely necessary for the production of the crop, and without it the mortgagee would have received nothing. As these expenditures were advanced by the respondent bank, no principle of equity requires that it should be refused credit for them in its general account.

The objections to other items require no special notice. With reference to certain of them, owing to the fact that the original records had been misplaced or destroyed, the manager of the bank had to rely on his memory as to their purposes, and it may be that, with reference to some of them, he had no recollection. But this in no manner disproves the correctness of the items. The system of bookkeeping adopted seems to have been that commonly used by banks, and there is no presumption that it does not show the true state of the account.

It is our conclusion that the decree should stand affirmed, and it will be so ordered.

MAIN, C. J., PARKER, and TOLMAN, JJ., concur.

PEMBERTON, J., dissents.