G. L. BULLARD v. A. R. FENDER, THE DOWNING COMPANY, a Georgia Corporation, THE DOWNING COMPANY, INC., a Delaware Corporation, and WHITE SPRINGS NAVAL STORES COMPANY, a Florida Corporation.

192 So. 167

Division A

Opinion Filed November 7, 1939

*H. L. Anderson,* for Appellant;

*Adair, Cooper, Osborne & Copp* and *Henry Fletcher Martin,* for Appellees.

THOMAS, J.—The suit in the chancery court was instituted by G. L. Bullard against A. R. Fender, and three corporations: The Downing Company, The Downing Com-

pany, Inc., and White Springs Naval Stores Company, for the foreclosure of a mortgage, injunction and accounting.

The specific allegations of facts forming the bases for relief were: A mortgage to secure an indebtedness of $15,000.00 evidenced by two notes of equal amounts payable July 1 in the years 1927 and 1928, was given by A. R. Fender to J. H. Bullard and G. L. Bullard, May 1, 1926, and was assigned to G. L. Bullard. By its terms it was subject to a first mortgage to The Downing Company, securing a note and open account and was to remain subordinate so long as the "balance secured thereby * * * does not exceed $64,000 with interest thereon * * * whether the amounts secured * * * have already been advanced or whether * * * the amount secured thereby is evidenced by the said promissory notes aggregating $64,000. * * * the mortgagees herein being fully advised that said first mortgage is to secure advances made from time to time by The Downing Company, and that to the extent aforesaid The Downing Company shall always be protected by its first mortgage even though from time to time the said mortgagor's notes and account with it may be reduced below $64,000 and interest as aforesaid, and thereafter increased." On June 30, 1930, A. R. Fender conveyed the legal title to the mortgaged real estate to White Springs Naval Stores Company a creature of The Downing Company, Inc., which owned and controlled its business. A. R. Fender then ceased to operate as a naval stores producer and thereafter The Downing Company made no advances of money to him. As part consideration for the conveyance The Downing Company agreed to release A. R. Fender from all claims against him and to cancel mortgages he executed. This promise was not performed. About the time of the conveyance, the mortgagee "did charge to White Springs Naval Stores Company" and thereafter looked to it alone for

payment of all the indebtedness secured by the mortgage given by A. R. Fender to The Downing Company. The notes imbedded in the (Bullard) mortgage were for $10,000 each, due in ninety days and on January 1, 1927, respectively, although the original intention was to make the mortgage cover an aggregate indebtedness of $15,000, and the scrivener was so instructed. After the mortgage and notes were written for the larger amount, but before execution, the agreement was modified and through mistake, which was not discovered until the year 1935, the notes appearing in the mortgage were not changed to conform to the ones actually delivered. Sometime subsequent to May 1, 1926, The Downing Company discontinued its business in Florida and further advancements were made to A. R. Fender or White Springs Naval Stores Company by The Downing Company, Inc., which "by mortgage deed made and delivered to it by defendant White Springs Naval Stores Company, dated April 14, 1933, took, accepted and acquired a mortgage lien upon the lands described in plaintiff's mortgage deed to secure payment to it of the same money and debt, which defendant Fender formerly owed to defendant The Downing Company * * *." All advances to A. R. Fender by The Downing Company, Inc., after notice of the mortgage then held by complainant, were not protected by the original mortgage, and all indebtedness from the former to the latter was discharged. Both Downing companies are estopped and the complainant's lien is superior to the claims of all the defendants.

The Downing Company and The Downing Company, Inc., are referred to in the original bill as separate entities, organized under the laws of Georgia and Delaware, respectively, but it was charged in an amendment to the bill that they were in fact one. In our statement of the substance of the complainant's bill there is an apparent discrepancy with

reference to the execution of the notes for $10,000, caused by the amendment eliminating the allegation that no notes for this amount were signed but leaving the one that before execution notes for smaller amounts were substituted.

In the answer the circumstances surrounding the transaction are described quite differently. It is stated there that the notes actually secured were the ones for $10,000 each, as at first intended; the assignment of mortgage was delivered to G. L. Bullard in 1932 and the transfer of the legal title was effectuated in 1930, subject to the mortgage from A. R. Fender to The Downing Company, Inc., which was an extension or renewal of the one dated May 1, 1926. G. L. Bullard was not bona fide a "holder for value before maturity, but purchased the same subject to all of the infirmities charged by law to past due obligations." The Downing Company took the mortgage on May 1, 1926, and complainant's lien is subordinate to it. The Downing Company, Inc., owned or controlled the capital stock of White Springs Naval Stores Company but they are distinct corporate entities. The transfer from A. R. Fender was made expressly subject to the mortgage to The Downing Company, Inc., without any assumption on the part of the grantee to pay the debt and an agreement to discharge the indebtedness was not the consideration but, on the contrary, the consideration was the receipt by A. R. Fender of certain capital stock in White Springs Naval Stores Company equal in value to the appraised worth of the equity. On June 18, 1930, White Springs Naval Stores Company had 60 shares of stock outstanding owned or controlled by The Downing Company, Inc., which held a mortgage on the property of White Springs Naval Stores Company of approximately $95,000. The value of the stock delivered to A. R. Fender was dependent upon the ability of White Springs Naval Stores Company to pay its debts. A. R. Fender pledged

this stock to The Downing Company, Inc., as collateral for a note of about $1,000. In August, 1926, The Downing Company assigned to The Downing Company, Inc., the notes and mortgages and all other obligations of A. R. Fender and about the time of the conveyance by him to White Springs Naval Stores Company, June 18, 1930, The Downing Company, Inc., charged the account of White Springs Naval Stores Company with about $76,000 which Fender owed the former. White Springs Naval Stores Company then owed this amount and the sum of approximately $95,000, and had no assets except those mortgaged to The Downing Company, Inc., which has continued to advance money in reliance upon the mortgages from Fender and the naval stores company. The obligations now held amount to more than $230,000. The sum of the original mortgage is $64,000, and this mortgage as renewed or extended January 23, 1928, is and has continued a lien. The defendants were ignorant of any agreement between Fender and the complainant about a debt of $15,000, and the two notes for $10,000 each were in fact executed and paid at maturity. The Downing Company knew the $10,000 notes to have been given by Fender to the Bullards because counsel for The Downing Company prepared them and delivered them for execution assuring one of the payees that the company would lend the maker the money to pay them at maturity. The notes evidenced a part of the purchase price of the property mortgaged to secure them. The description of property in this instrument was altered by adding real estate to the leases and personal property encumbered without knowledge of The Downing Company. Agreeable to its promise to lend the money to pay the notes when due, The Downing Company honored a draft on it by Fender to Bullards in the sum of $10,200 to pay principal and interest on the ninety-day note and charged the amount to Fender's

account secured by the first mortgage which The Downing Company believed would reduce complainant's mortgage to that extent. On August 5, 1926, The Downing Company assigned to The Downing Company, Inc., all obligations it held of A. R. Fender, the mortgage indebtedness then being about $45,000, and pursuant to the agreement between The Downing Company and Fender and the assumption of the debts of The Downing Company by The Downing Company, Inc., and as contemplated in the clause in complainant's mortgage, The Downing Company, Inc., continued its advances to Fender including payment of the note maturing January 1, 1927, in the same manner as the other $10,000 note was paid, relying as before on the protection afforded under the mortgage. Upon payment of this note, Fender's indebtedness stood at approximately $50,000. Payment of these two notes, aggregating $20,000, rendered the complainant's mortgage void. The Downing Company continued to finance Fender until his indebtedness reached more than $61,000 when he gave this company notes to evidence $68,000 covering present and future indebtedness which was secured by a mortgage of the same date, January 23, 1928, and recited:

"THIS MORTGAGE AND CONTRACT, to the extent of the property therein described which is included herein, is in extension, renewal or substitution of or for that certain mortgage and contract given by A. R. Fender to The Downing Company dated May 1st, 1926, and recorded in the public records of Hamilton County, Florida, in Mortgage Book 18, at page 119, *et seq.*, which said mortgage and contract was under date of August 5th, 1926, by unrecorded assignment to The Downing Company, Inc., but the total obligations described in said mortgage and contract dated May 1st, 1926, to the extent of the amount described herein and secured hereby, are still due and owing by the said

A. R. Fender, and therefore the mortgagee herein shall not by the taking of this mortgage and contract be deemed to subordinate its lien to "the lien or claim acquired after May 1st, 1926, of any party upon the property described in the mortgage and contract of said date, but on the contrary the mortgagee in this mortgage named, to the extent of all of the obligations of the mortgagor in and by this mortgage and contract secured, reserves its lien upon all of that part of the property described in the said mortgage dated May 1st, 1926, which is again described in this mortgage and contract."

Between the dates January 23, 1928, and June 18, 1930, A. R. Fender was not at any time indebted for less than the amount he owed December 21, 1929, $55,000, which increased to $76,000 by June 18, 1930. The mortgage from White Springs Naval Stores Company to The Downing Company, Inc., dated May 22, 1930, encumbering property other than that described in complainant's and the Fender mortgages was supplemented by a mortgage of April 14, 1933, securing another note of White Springs Naval Stores Company for about $4,800 burdening the property included in the mortgage of May 22, 1930, and certain personal property and other real estate. The lien of complainant's mortgage was limited to security for two $10,000 notes which have been paid, hence the mortgage was void.

The digest of the bill and answer reflects the many complications present in the transactions which really affected the operation of properties used in distilling turpentine, two companies being factors and the third and the individuals, producers.

In detailing the facts relevant to these pleadings, we will attempt to discuss them in chronological order, that they may be simplified.

Fender proposed to buy leases and personal property owned by Bullard Brothers and in this activity he was to be financed by The Downing Company. The representatives of this company believed that the purchase price should not exceed twenty-nine or thirty thousand dollars. The sale was consummated on that basis upon the terms of nine or ten thousand cash and two deferred payments of ten thousand each. The first payment and the deferred ones were made by the Downing Company. In this "purchase money mortgage deed," as it was designated in the instrument itself, there was the express condition that it was subject to a mortgage to the Downing Company from the mortgagor to secure $64,000 of present and future indebtedness.

This was May 1, 1926.

The mortgage was subsequently assigned to complainant and is the one sought to be reformed and foreclosed.

The Downing Company, Inc., was organized in Delaware as a successor of The Downing Company, and on August 5, 1926, all securities and other property in this State were transferred from the latter to the former.

The original mortgage having been assigned and the advances to A. R. Fender having increased, another mortgage was executed by A. R. Fender, January 23, 1928, to secure one promissory note for $11,000 and three for $19,000 each. The property encumbered was the same as that in the mortgage of May 1, 1926, except that it omitted leases which had expired and included new ones obtained by the mortgagor. This mortgage provided that as to property it covered which was also mentioned in the first mortgage it was an "extension, renewal or substitution" of the original.

The Downing Company, Inc., owned property near that of A. R. Fender and it was decided that it would be ad-

visable to form a company for the purpose of consolidating and operating both units. This was in the spring of 1930 and on May 22 The Downing Company, Inc., transferred to the new corporation, White Springs Naval Stores Company its property then mortgaged for $94,971.57, receiving at the time sixty shares of stock in the grantee corporation.

On June 18, 1930, A. R. Fender, then financially embarrassed, also conveyed his tract, leases and equipment to White Springs Naval Stores Company in return for thirty shares of stock in the grantee corporation and this stock was pledged with The Downing Company, Inc., to secure the additional loan of approximately $1,000 to enable him to discount and discharge the residue of his personal obligations.

Certain salient facts should be borne in mind in considering this evidence. There was a dearth of information about any additional indebtedness, of A. R. Fender to complainant in the sum of $15,000 or any other amount the while the history of his activities was traced. There is evidence that although Fender's financial backers placed a limit of $30,000 on the price he should pay complainant, the prospective purchaser and seller were secretly discussing, if not agreeing on, a sum 50 per cent greater. Although the assertion appears that two of the notes should have been for $7,500 each and the inclusion of two of them for $10,000 each was error, Fender admitted he signed the copies in the mortgage. Although opportunity offered, complainant did not disclose his claim until about nine years after the transaction. A. R. Fender was in the employ of White Springs Naval Stores Company for many months after its incorporation, was a director and stockholder and familiar with its affairs. He signed the minutes of the directors' meeting held June 18, 1930, and knew the reason The

Downing Company, Inc., retained his stock, namely; so he could realize sufficient money to pay the remainder of his debts, the $15,000 not included.

The chancellor concluded that complainant should prevail in his contest with A. R. Fender but not over the defendants The Downing Company and its successor The Downing Company, Inc. His decree provided for reformation of the mortgage so far as it did not affect the rights of these two corporations. He held complainant estopped to claim against the Downing companies that the original lien of May 1, 1926, secured aught but the two $10,000 notes or that the deed to White Springs Naval Stores Company was invalid "but that the said title * * * is nevertheless subject to the lien of plaintiff's said mortgage ** *." He decided that the conveyance to White Springs Naval Stores Company was subject to the mortgage from A. R. Fender to The Downing Company, Inc., dated January 23, 1928; that Fender owed $64,000, principal, and interest from that date on the principal and the interest then accrued; that A. R. Fender owed complainant $15,000 for which the mortgage of May 1, 1926, was secured subject to the rights of the Downing companies under the same mortgage.

The only question involved is whether the chancellor erred in holding that complainant was not entitled to a decree reforming the Bullard mortgage so that it would secure the notes for $7,500 each and foreclosing the mortgage as prior to the lien of The Downing Company, Inc.

That a mortgage may be given to secure future loans has the support of eminent authority.

"It is now well settled that mortgages given in good faith to secure future advances, either in addition to or without a present indebtedness are valid and binding between the parties. * * *

"If the advances were actually made within the scope of the mortgage, the fact that they were originally optional or obligatory would be wholly immaterial between the parties themselves." Pomeroy's Equity Jurisprudence (3 Ed.), Sec. 1197.

"The same. As Affected by the Recording Acts.—The general doctrine being thus established that the mortgage constitutes a prior lien for all advances made in pursuance thereof before notice of a subsequent encumbrance or conveyance, the effect of the recording acts remains to be considered. It is at this point that the diversity of opinion among the American courts has chiefly arisen. The following conclusions seem to be in harmony with established principles, and to be sustained by the weight of authority; and they may be regarded, I think, as furnishing the prevailing rule: When a mortgage to secure future advances reasonably states the purpose for which it is given, its record is a constructive notice to subsequent purchasers and encumbrancers; they are thereby put upon an inquiry to ascertain what advances or liabilities have been made or incurred. The record of a subsequent mortgage or conveyance, or the docketing of a subsequent judgment, is not a constructive notice of its existence to such prior mortgagee. The prior mortgage, therefore, duly recorded, has a preference over subsequent recorded mortgages or conveyances, or subsequent docketed judgments, not only for advances previously made, but also for advances made after their recording or docketing without notice thereof." Pomeroy's Equity Jurisprudence (3 Ed.), Sec. 1199.

Any question of good faith or of loans beyond the scope of the mortgage is dispelled by the unequivocal language used in the provision that one instrument was subordinate to the other. More, it is stated there that the two are of

"even date," so we cannot understand how complainant could prevail even if the rule were contrary to the one we have quoted.

"A mortgage to secure future advances, which on its face gives information as to the extent and purpose of the contract, so that a purchaser or junior creditor may, by an inspection of the record 'And by ordinary diligence and common prudence, ascertain the extent of the incumbrance,' will prevail over the supervening claim of such purchaser or creditor as to all advances made by the mortgagee within the terms of such mortgage, whether made before or after the claim of such purchaser or creditor. It is not necessary for a mortgage for future advances to specify any particular or definite sum which it is to secure. It is not necessary for it to be so completely certain as to preclude the necessity of all extraneous inquiry. If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and, if he fails to make it in the proper quarter, he cannot claim protection as a *bona fide* purchaser." Witczinski v. Everman, 51 Miss. 841, text 846. See also Poole v. Cage (Text. Civ. App.), 214 S. W. Rep. 500; Eltopia Finance Co. v. Colley, 126 Wash. 554, 219 Pac. Rep. 24.

"Priority of recorded mortgage expressed to cover future advances.—The rule that a recorded mortgage expressed to cover future advances has priority in all cases over subsequent conveyances and incumbrances, has full support in recent discussions, and must now be regarded as a settled rule of law. Notwithstanding all the distinctions and refinements which have been introduced into the law on this subject by the many conflicting adjudications upon it, there

is strong reason and authority for the rule that a mortgage to secure future advances, which on its face gives information enough as to the extent and purpose of the contract, so that any one interested may by ordinary diligence ascertain the extent of the incumbrance, whether the extent of the contemplated advances be limited or not, and whether the mortgagee be bound to make the advances or not, will prevail over the supervening claims of purchasers or creditors, as to all advances made within the terms of such mortgage, whether made before or after the claims of such purchasers or creditors arose, or before or after the mortgagee had notice of them. If the mortgage contains enough to show a contract between the parties, that it is to stand as a security to the mortgagee for such indebtedness as may arise from the future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and if he fails to make it he is not entitled to protection as a bona fide purchaser. Such a mortgage is considered as good against subsequent incumbrances to the full amount of the advances provided for, or even verbally agreed for, and the mortgagee is held to have a right to rely upon it, and to make such advances without regard to what other incumbrances may afterward have been put upon the property." Jones on Mortgages, Sec. 457, Vol. 1 (8 Ed.).

It is of utmost significance that all of the parties litigant were engaged in a particular business which had its own characteristics, that is, the production and marketing of turpentine products. The activities of the Bullards in their sale to Fender; of Fender in his mortgage to The Downing Company; of The Downing Company in transferring its assets in Florida to The Downing Co., Inc.; of the latter in assigning its leases in a certain county to a new corporation (White Springs Naval Stores Company) and causing Fender to do the same in order to liquidate his indebtedness

and concentrate control of neighboring properties in one corporation do not arouse any suspicion of fraud or inequity.

During the succession of events, beginning with the transaction between complainant and Fender, the former was on notice of the relationship between Fender and the corporation which had given him the financial support necessary to purchase complainant's property. To repeat, both of the $10,000 notes were discharged by drafts, one on The Downing Company and one on The Downing Company, Inc.

So far as the preference of complainant's claim is concerned, we think that any decision other than the one rendered would not be justified. The record is silent as to any notice of the notes of $7,500. As we have pointed out, the mortgage was prepared by counsel for The Downing Company and revised before execution, a fact which, according to the evidence, was not learned until many years afterward. The participation of Fender throughout and the silence of complainant together with the circumstances we have discussed are most convincing that the chancellor's disposition of the issues was just, fair and equitable.

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.