[No. 28404. Department Two. August 11, 1941.]

ELMENDORF-ANTHONY COMPANY, *Appellant*, v. L. E. DUNN *et al., Defendants*, LONG LAKE LUMBER COMPANY, *Respondent.*[1]

[1]Reported in 116 P. (2d) 253.

*Hamblen, Gilbert & Brooke,* for appellant.

*Cannon, McKevitt & Fraser (Frank J. Blade,* of counsel), for respondent.

JEFFERS, J.—On July 17, 1940, plaintiff, Elmendorf-Anthony Company, a corporation, commenced an action against L. E. Dunn and wife, Long Lake Lumber Company, *et al.,* in the superior court for Spokane county, to foreclose a real estate mortgage. Defendant Long Lake Lumber Company appeared in the action and filed an answer and cross-complaint to plaintiff's complaint. In its cross-complaint, Long Lake Lumber Company alleged that it held a note secured by a real estate mortgage on the same property covered by plaintiff's mortgage, and prayed that it have judgment against Dunn and wife on its note and mortgage, and that the lien of its mortgage be decreed to be prior to plaintiff's claimed lien in the amount of $408.25, alleged to have been expended by plaintiff under its mortgage to complete the building on the mortgaged premises.

The material facts are not in dispute and may be stated as follows: On August 17, 1939, defendants Dunn and wife made, executed, and delivered to plaintiff their promissory note for twenty-two hundred dollars, payable in monthly installments beginning January 1, 1940. On the same day, Dunn and wife executed and delivered to plaintiff a real estate mortgage on lot 4, block 138, Lidgerwood Park addition to Spokane, to secure the note. This mortgage was duly recorded on August 19, 1939. The note provides in part:

"And if default for the space of ten days after it becomes due shall be made in the payment of any installment of principal and/or interest, or any part thereof; or if the maker of this note or any successor in interest shall allow taxes or any public assessment upon the whole or any part of the property, upon which the pay-

ment of this note is secured, to become delinquent, or any interest or penalty accrues thereon; or if the security shall in any way become impaired; then the entire principal sum, with accrued interest, shall at once become due and payable, at the election of the holder hereof, without notice."

The mortgage provides that it is given to secure the payment of a promissory note for twenty-two hundred dollars. Attached to and as a part of the mortgage as filed is a rider, which provides:

"It is further agreed by the mortgagors that in the event they shall not complete the construction of the building or buildings now being erected or to be erected on the premises hereby mortgaged, in accordance with plans and specifications submitted to the mortgagee and to the satisfaction of the Federal Housing Administrator, on or before December 1, 1939, or if work on said construction should cease before completion and the said work should remain abandoned for a period of fifteen days, then and in either event, the entire principal sum of this note secured by this mortgage and interest thereon shall at once become due and payable, at the option of the mortgagee; and in the event of abandonment of work upon the construction of the said building or buildings for the period of fifteen days as aforesaid, the mortgagee may, at its option, also enter into and upon the mortgaged premises and complete the construction of the said building or buildings hereby giving to the mortgagee full power and authority to make such entry and to enter into such contracts or arrangements as may be necessary to complete the said building or buildings; and monies expended by the mortgagee in connection with such completion of construction shall be added to the principal amount of said note and secured by these presents, and together shall be payable by the mortgagor on demand, with interest at the rate set forth in said note."

Mr. Baker, vice-president of plaintiff company, testified that this deal with the Dunns was what is known as a "construction loan," under which advances were

32

to be made to Mr. Dunn, as the building to be constructed progressed.

On October 31, 1939, Dunn and wife made, executed, and delivered to defendant Long Lake Lumber Company their promissory note for $989.51, secured by a real estate mortgage on the same property covered by plaintiff's mortgage. This mortgage was duly recorded on November 1, 1939. The note given by the Dunns to the lumber company was for a preexisting debt.

Mr. Dunn did not complete the building by December 1, 1939, as contemplated by the mortgage.

Mr. Baker further testified that, up to December 1, 1939, plaintiff had advanced to Mr. Dunn the sum of $2,151.59. No further sums were advanced to Mr. Dunn personally. Mr. Baker testified that plaintiff company did not adhere strictly to the terms of the mortgage relative to requiring Mr. Dunn to complete the building by December 1st, but extended the time for such completion. It does not appear that Mr. Dunn did anything after the date last above mentioned, and, after seeing him several times and failing to get any action from him, in June, 1940, plaintiff wrote Mr. Dunn a registered letter, informing him that, unless the building was completed within ten days, it would be necessary for plaintiff to take action.

On June 13, 1940, Mr. Dunn came to the office of plaintiff, and informed plaintiff that it would be impossible for him to complete the job. Mr. Baker testified that Dunn abandoned the project. On June 14, 1940, plaintiff procured a title report on this property, and it is admitted by plaintiff that this report showed the Long Lake Lumber Company mortgage, and that plaintiff knew of this second mortgage from that date. The lumber company knew of plaintiff's mortgage on November 1, 1939, and so admit. Mr. West, manager of the retail department of defendant company, testified

that he knew plaintiff had a twenty-two hundred dollar first mortgage on this property, but that he did not examine the mortgage.

On June 24, 1940, plaintiff, electing to take advantage of the purported option clause in the mortgage relative to an abandonment of the work for a period of fifteen days, procured one Stammerjohan to do certain work which plaintiff considered necessary to be done to put the house in a salable and rentable condition. Mr. Stammerjohan was paid the sum of $408.50, and it is not denied that this was a reasonable amount for the services performed. In regard to work done on the house, Mr. Stammerjohan testified that he put a coat of linoleum paint on the outside of the house, replaced two broken windows, sanded and enameled all the woodwork, took off and refitted the doors, installed a toilet and wash basin, and put a trap and faucet on the sink; that he put in a shower head, water tank, and laundry trays in the basement, completed the electric wiring, and put in light fixtures; that he built a front walk, and did some rough grading; and that he finished the garage, putting on doors, hardware, and a shingle roof.

Mr. Stammerjohan further testified (this being the only testimony on this point) that the finished house would probably be worth $3,350 or $3,400; that it could have been sold as an unfinished house, but that, never having sold or bought such an unfinished structure, he did not know its value, but thought there would be more than seven hundred dollars difference between its value unfinished and its value as it is now.

From the foregoing facts, the trial court concluded that plaintiff was entitled to judgment against Dunn and wife in the sum of $2,151.59, with interest, as therein provided, and to the further sum of $13.95 for abstract and title expense, an attorney's fee of $125,

and costs of suit, the foregoing items representing the amount of plaintiff's prior mortgage lien; that plaintiff was also entitled to judgment against Dunn and wife in the sum of $408.25, for disbursements expended in completing the dwelling house, together with interest thereon at the rate of eight per cent per annum from July 16, 1940, together with an attorney's fee of twenty-five dollars, the foregoing two items representing the amount of plaintiff's mortgage lien subsequent and junior to the mortgage lien of the lumber company. The court further concluded that defendant Long Lake Lumber Company was entitled to judgment against Dunn and wife in the sum of $989.51, together with interest thereon at six per cent per annum from October 31, 1939, together with title expense amounting to $5.25, an attorney's fee of one hundred dollars, and costs of suit. The foregoing items represented the amount of defendant lumber company's mortgage lien subsesequent to plaintiff's mortgage, except that the same was and is prior to the item of $408.25 and attorney's fee. The court further concluded that each of the parties was entitled to have its respective mortgage foreclosed, and the property sold, as provided by law, and the proceeds of such sale applied first to the items due plaintiff and declared to be a prior lien; second, to the items due defendant lumber company; and third, to the $408.25 expended by plaintiff in completing the building on the mortgaged premises, and the twenty-five dollar attorney's fee.

Judgment was entered in accordance with such conclusions, on December 20, 1940. Plaintiff has appealed from that portion of the judgment which accords and decrees priority to the mortgage lien of the Long Lake Lumber Company as against that part of the mortgage lien of plaintiff securing items due to plaintiff in the

sum of $422.15, being the item of $408.25 and accrued interest, plus twenty-five dollars attorney's fee.

Appellant claims the court erred in entering that portion of the findings and decree which accord priority to the second mortgage of respondent lumber company over items expended by appellant to complete the building on the mortgaged premises.

The following question is here presented: Where a mortgage, given to secure advances for the construction of a dwelling house, provides that, in case of abandonment by the mortgagor before completion for a period of fifteen days, the mortgagee may, *at its option,* enter upon the premises and complete the construction and add the sums so expended to the principal amount provided for in the note and secured by the mortgage, and thereafter the mortgagor executes and delivers to another a second mortgage on the same property for a preexisting debt, and then abandons construction before the house is completed, and the first mortgagee, with actual knowledge of the second mortgage, enters upon the premises and makes certain expenditures deemed by it necessary to complete construction, is the first mortgagee entitled to priority over the lien of the second mortgagee for the total sum advanced, including the sum expended on the property after abandonment and notice of the second mortgage?

Appellant here seeks to foreclose its mortgage, and claims as a prior lien thereunder the sum of $408.50, interest, and attorney's fees, in addition to the sum of $2,151.59, actually advanced by the mortgagee up to the time of the abandonment.

Respondent agrees that appellant has a superior lien as to the $2,151.59 and other items heretofore mentioned, allowed by the court, but contends that its second mortgage is superior in right to appellant's claim of $408.50, interest thereon, and attorney's fee of

twenty-five dollars. Respondent relies on the rule that, where the mortgagee is not bound to make certain advances, such optional advances, when made with actual knowledge of an intervening encumbrance upon the property, are made subject to that intervening encumbrance.

This rule, as variously stated, undoubtedly has the support of the almost universal weight of authority. 19 R. C. L. 429, § 211; 1 Jones on Mortgages (8th ed.), 583, § 452; 41 C. J. 527, § 468. In 5 A. L. R. 398, under the heading "Priority as between mortgage for future advances and mechanics' liens," we find the following statement of the rule:

"By the weight of authority, a mortgage for future advances becomes an effective lien from the time of its execution, or, as to subsequent purchasers and encumbrancers, from the time of its recordation, rather than from the time when each advance is made, where the making of the advances is *obligatory* upon and not merely optional with the mortgagee." (Italics ours.)

See, also, 53 A. L. R., the annotation on pages 580-581, where the California rule, which follows the general rule, is set out. 3 Pomeroy's Equity Jurisprudence (4th ed.) discusses this question on page 2855, § 1198, continuing to § 1200, on page 2862.

While there seems to be a difference of opinion as to whether actual notice of a subsequent encumbrance is necessary to cut off the priority of optional advances made under the provisions of a prior mortgage, or whether constructive notice is sufficient, there is practically no difference of opinion as to the rule relative to optional advances made, under facts such as were found to exist in this case.

General statements may be found in some of the cases which would seem, at least to some extent, to support appellant's contention herein, but when the cases are read and the rules therein announced con-

sidered in connection with the facts, they do not support appellant's contention.

We again refer to the general rule, as stated by 9 Thompson on Real Property (Perm. ed. 1940), 326:

"If such mortgagee is not under any obligation to make advances, and after notice of a subsequent mortgage does make further advances to the extent of such advances, the subsequent mortgagee has the right of precedence; but if such mortgagee is under obligation to make the advances, he is entitled to the security, whatever may be the encumbrances subsequently made upon the property, and whether he has notice of them or not."

1 Wiltsie on Mortgage Foreclosure (5th ed.), 448, § 254, goes a little further than some of the other text writers, when he states that actual or *constructive* notice of a subsequent conveyance or encumbrance is sufficient to cut off the priority of optional advances made after such notice.

This court has not passed directly on the question here presented, and in so far as we have been able to find, has referred to the rule in two cases only.

In the case of *Inland Trading Co. v. Edgecombe,* 57 Wash. 257, 106 Pac. 768, the general rule hereinbefore set out, relative to future optional advances, is quoted with approval from *Davis v. Carlisle,* 142 Fed. 106, but the rule itself was not involved in the *Edgecombe* case, because it appears that the mortgage there in issue contained no provision relative to future advances, nor were the items for which the advancements were made included in the items to be secured by the mortgage.

In *Eltopia Finance Co. v. Colley,* 126 Wash. 554, 219 Pac. 24, we again referred to the rule as follows:

"The case [referring to the *Edgecombe* case, *supra*], however, does seemingly approve the principle that a mortgage for future advances which leaves it optional with the mortgagee whether or not he shall make them, will be postponed to the lien of a junior encumbrance

if made after knowledge that the junior mortgage attached."

However, we held the rule was not applicable in the cited case, as there was a positive agreement to make the advances.

Unless the reference to the rule found in the two cases last above mentioned is to be given some weight, the question is an open one in this state. If there were any substantial diversity of opinion in the decisions of our sister states, we would be inclined to view the rights of the first mortgagee relative to advances made pursuant to an optional clause in a construction contract, even after notice of a junior encumbrance, as superior to such junior encumbrance. But as we read the cases cited by appellant, not one has reached that result, and our own efforts to locate such authority has proved unavailing, with the possible exception of *First Nat. Bank v. Zook*, 50 N. D. 423, 196 N. W. 507.

We have carefully read the case of *Bullard v. Fender*, 140 Fla. 448, 192 So. 167, cited by appellant as tending to show that the modern trend of authority is in line with its contention. We cannot agree that the cited case holds contrary to the general rule. However, this case, as we read it, does uphold the general rule, and in addition states the rule applicable as between the mortgagor and mortgagee, which latter rule was recognized by the trial court in the instant case. We quote from the cited case:

"That a mortgage may be given to secure future loans has the support of eminent authority.

" 'It is now well settled that mortgages given in good faith to secure future advances, either in addition to or without a present indebtedness are valid and binding between the parties. . . .

" 'If the advances were actually made within the scope of the mortgage, the fact that they were originally optional or obligatory would be wholly imma-

terial between the parties themselves.' Pomeroy's Equity Jurisprudence (3 Ed.), Sec. 1197 . . .

" 'The general doctrine being thus established that the mortgage constitutes a prior lien for all advances made in pursuance thereof *before notice of a subsequent encumbrance or conveyance,* the effect of the recording acts remains to be considered. It is at this point that the diversity of opinion among the American courts has chiefly arisen. The following conclusions seem to be in harmony with established principles, and to be sustained by the weight of authority; and they may be regarded, I think, as furnishing the prevailing rule: When a mortgage to secure future advances reasonably states the purposes for which it is given, its record is a constructive notice to subsequent purchasers and encumbrancers; they are thereby put upon an inquiry to ascertain what advances or liabilities *have been made or incurred.* The record of a subsequent mortgage or conveyance, or the docketing of a subsequent judgment is not a constructive notice of its existence to such prior mortgagee. The prior mortgage, therefore, duly recorded, has a preference over subsequent recorded mortgages or conveyances, or subsequent docketed judgments, not only for advances previously made, but also for advances made after their recording or docketing *without notice thereof.'* Pomeroy's Equity Jurisprudence (3 Ed.), Sec. 1199." (Italics ours.)

As indicating how unsatisfactory quotations picked from a case may be, unless the facts in such case are considered, the following statement from the *Bullard* case, *supra,* is quoted in appellant's brief:

"A mortgage to secure future advances, which on its face gives information as to the extent and purpose of the contract, so that a purchaser or junior creditor may, by an inspection of the record, and by ordinary diligence and common prudence, ascertain the extent of the incumbrance, will prevail over the supervening claim of such purchaser or creditor as to all advances made by the mortgagee within the terms of such mortgage, whether made before or after the claim of such purchaser or creditor arose. It is not nec-

essary for a mortgage for future advances to specify any particular or definite sum which it is to secure."

This statement purports to be supported by *Witczinski v. Everman*, 51 Miss. 841, and the *Eltopia Finance Co.* case, *supra*. There is no question but that it is a proper statement of the rule as applied to mandatory advances, but that it does not apply to optional advances is apparent from the facts in the *Bullard* case, and the further fact that the two cases above referred to were cited in support of the statement. In the *Eltopia Finance Co.* case, as we have heretofore stated, we held there was a positive agreement to make the advances. While the *Witczinski* case, which is cited in the *Bullard* case, also contains the statement quoted in appellant's brief, it seems to us it may easily be distinguished from the instant case on the facts.

Appellant has suggested two further propositions to sustain its position on this appeal. It is contended that the advances here made, although in form optional, were in fact mandatory, because as between the mortgagor and the mortgagee in possession, it is the duty of the mortgagee to do whatever is reasonably necessary for the protection of the premises or to put the property in tenantable condition.

We have read the authority cited by appellant to sustain this contention, and especially the case of *Miller v. Ward*, 111 Me. 134, 88 Atl. 400, 49 L. R. A. (N. S.) 122. In the first place, neither the *Miller* case nor the other cases cited involve the right of a subsequent encumbrancer. The *Miller* case involved the right of a mortgagor to redeem, and the question was whether or not the mortgagor must pay for certain improvements made on the property by the mortgagee. The court invoked the rule that a mortgagee in possession had the right, as against the mortgagor, to make necessary improvements to prevent waste. The court

in the cited case further stated that what is a proper expenditure must depend upon the circumstances of each case.

While we doubt if it is material, under the facts in this case and the rule as we conceive it to be, we may state that it does not appear but that this property would have been ample security for the amount actually loaned by appellant up to the time of the abandonment by the mortgagor. Neither does it appear that there would necessarily have been any waste, had appellant proceeded to foreclose when it first learned of the abandonment.

We are satisfied there would have been no liability on the part of appellant to the Dunns, had it failed to make any further advancements under this mortgage after the abandonment.

We are of the opinion that, under the facts in this case, the advances here in question were voluntarily made by appellant, in the exercise of its option, for the purpose of putting the house in a salable and rentable condition, and not pursuant to a mandatory duty.

Appellant also urges that the rule as to optional future advances is not applicable where, as here, the subsequent encumbrance is given to secure a pre-existing obligation, because the respondent is not an encumbrancer for value. In so far as we have been able to determine, the cases and text writers on this subject have not distinguished the rights of a junior encumbrancer for value from the rights of those who acquired their encumbrance as security for a pre-existing obligation. In *Reidy v. Collins,* 134 Cal. App. 713, 26 P. (2d) 712, it is stated:

"Where a mortgagee makes advances which it is optional with him to make his lien for such as are made after actual notice of a junior encumbrance will be postponed to that of the latter. And judgment liens are within the same rule."

The following statement appears in 1 Jones on Mortgages (8th ed.), 586:

"The mortgagee not being bound by his contract to make the indorsements or future advances, the equity of a junior incumbrancer for an *existing debt,* or of an *attaching creditor,* will intervene and take precedence of any advances made or liabilities incurred after actual notice of the subsequent lien. Such junior incumbrancer or creditor acquires a lien upon the property as it then is." (Italics ours.)

No case has been cited, nor have we been able to find one, in which it has been held that the rule is inapplicable where the junior encumbrance secures a past obligation. On principle, such a holding would be opposed to the general rule, which rests on the premise that "where the advance is optional with the mortgagee, . . . the lien thereof does not attach until it is actually made." 3 Pomeroy's Equity Jurisprudence (4th ed.), 2861. Before the lien attached, appellant had no claim on the property as to future advances, and he is therefore in no position to complain of the manner in which the mortgagor may have made any prior disposition of the mortgagor's unencumbered interest in the property.

Appellant cites *Home Savings & Loan Ass'n v. Burton,* 20 Wash. 688, 56 Pac. 940; *Speirs v. Jahnsen,* 143 Wash. 297, 255 Pac. 117; and *Seward v. Seward,* 145 Wash. 61, 258 Pac. 856. None of these cases involved a mortgage containing an optional provision relative to future advances. *Seward v. Seward* involved the question of priority between a mortgage executed prior to, but recorded subsequent to, another mortgage. The case of *Speirs v. Jahnsen* involved the question of priorities between one who advanced money under a contract for the construction of a house, and the holder of a deed, construed by the court to be a mortgage, subsequently executed and recorded. The *Home Savings &*

*Loan Ass'n* case, undoubtedly because the mortgage contained a mandatory provision relative to advances, announced the rule to be, as stated in the case of *Topia v. Demartini,* 77 Cal. 383, 19 Pac. 641, 11 Am. St. 288, that

"The mortgage, as against subsequent encumbrancers, becomes a lien for the whole sum advanced, from the time of its execution, and not for each separate amount advanced from the time of such advancement, although the right to enforce the collection thereof can only arise upon each advancement being made."

We are of the opinion that the standard provision in a mortgage relative to the payment of taxes by a mortgagee is not analogous to a provision relative to optional advances. Taxes must be paid; the amount is certain. In the instant case, the optional advances were made, according to the testimony of Mr. Baker, appellant's witness, for the purpose of putting the house in a salable and rentable condition.

Under the facts in this case and the authorities cited, the judgment of the trial court must be, and is, affirmed.

Robinson, C. J., Beals, Millard, and Simpson, JJ., concur.