INVESTORS SYNDICATE, a Corporation of Minnesota, v. JACOB A. HENDERSON, KATHERINE C. MAULE, etc., *et al.*

6 So. (2nd) 629

Division A

Opinion Filed December 5, 1941

On Rehearing March 6, 1942

*O. B. Simmons, Jr., Thos. McE. Johnston,* and *Evans, Mershon & Sawyer,* for Appellant;

*Frank L. Butts,* for Appellees, Jacob A. Henderson and Wife, *Blackwell & Walker,* for Appellees, Kathryn C. Maule, Trading and doing business as Maule Industries.

PER CURIAM.—This appeal is from an order dismissing on final hearing a bill of complaint to foreclose a mortgage and a cross-bill, and an order denying a petition for rehearing. The appellee, a defendant below, Kathryn C. Maule, individually, and as Executrix of the Last Will and Testament of E. P. Maule, trading and doing business as Maule Industries, seeks a review of the same orders as to the cross-bill.

The defendant Henderson, and his wife, own a plot of property in Miami. Desiring to build on it, they had one Hilson negotiate for the loan of $2900 from plaintiff after a commitment was obtained from the Federal Housing Administration. Guaranty Title and Abstract Corporation closed the transaction with the Hendersons, who executed note and mortgage in the sum of $2900 on June 9, 1939. Plaintiff retained

the mortgage funds, with the purpose of advancing part of it upon successive completion of various stages of the building and FHA approval thereof. In the meantime Henderson had contracted with one Church to build the house. The house had been partially completed and plaintiff had advanced 60% of the mortgage loan to the Guaranty Corporation which had in turn disbursed the money to various laborers and materialmen for their contributions to the structure, when the FHA apparently refused to further approve the construction and Church abandoned the contract, leaving the house in its partially completed condition. On October 12, 1939, plaintiff filed its bill of complaint to foreclose its mortgage in the amount of the funds advanced, making Henderson and wife and the many laborers and materialmen defendants. The cause was referred to a special master who took testimony and filed a report recommending the dismissal of the plaintiffs' bill and the cross-bill of Maule Industries. Upon coming up for final hearing before a Circuit Judge other than the one first hearing the cause, it was re-referred to another special master who took additional testimony and filed a report recommending a decree for plaintiff and the dismissal of the cross-bill. The cause then came on for final hearing before the original Circuit Judge who sustained the objections to the second master's report and overruled those to the first's report and gave a final decree dismissing the bill of plaintiffs and the cross-bill of Maule Industries.

A petition for rehearing being denied, appeal was taken to this court.

It appears that the total advanced to the Guaranty Title and Abstract Corporation by plaintiff was $1740.

This amount was advanced by two checks, or "draws", of $870, made after the building had reached certain stages in its construction. When the checks came into the hands of the Guaranty Corporation it disbursed the funds in payment of labor and material which had gone into the construction of the building, taking up lien releases and receipts from the creditors. It is admitted on the record that the first of these "draws" was authorized disbursed by Henderson, but the testimony is conflicting as to whether Henderson gave Guaranty Corporation verbal authority to disburse the second. One master found that no such authority had been given, while the other found that it had been granted. The final decree makes no finding on this question but dismisses plaintiffs' bill because ". . . due to the fact that all the considerations mentioned in said promissory note had not been paid, the defendant was under no obligation to make the payments specified in the note until all conditions mentioned in the note had been met by the mortgagee. Therefore, he was not in default when the foreclosure suit was instituted. The suit . . . was prematurely brought." There are no "conditions" mentioned in the promissory note and the only consideration stated is a promise to pay $2900 "for value received."

The first question, therefore, is whether the suit was prematurely brought. Henderson claims that the mortgage was not to become effective until the completion of the building, claiming that this was the agreement he had with Hilson, who was dead at the time the bill was filed, and that the contractor, Church, was to obtain a construction loan. But on testifying, Henderson stated that before he gave the admitted authorization of the disbursement of funds

under the first "draw" of $870, he learned that he had a "Progress Loan" instead of one requiring Church, the contractor, to take a construction loan in addition to the mortgage. He further testified that after he had learned this he cautioned Guaranty Corporation not to pay out any of the funds except on his "O.K.", which he admittedly gave with regard to the first "draw" of $870. Henderson is, therefore, estopped from now asserting that the mortgage is no valid instrument because it was delivered subject to a condition (i. e. the completion of the house) which was never fulfilled. The question is whether under the agreement of the parties for the progress loan there was a default entitling the mortgagee, appellant, to foreclose his mortgage for those amounts advanced without its ever having advanced the total mortgage loan. It is shown by Henderson's testimony that he was well aware of the understanding between him and the appellant that the latter would advance 30% of the loan when the building reached a certain stage of construction and was approved to the stage by FHA, and another 30% after another stage was reached and approved, and the final 40% upon completion and approval. He submitted to these terms and waived any objection to them when he gave the admitted authorization for the disbursement of the first 30% advance. It was, therefore, incumbent upon him to fulfill his obligation to see that the building reached those proper stages of construction with FHA approval before he could be heard to say that there was no default of the mortgage because appellant had not advanced the total amount of the loan. The contractor, Church, was Henderson's contractor, and it was because of Church's failure to properly complete

the job that construction stopped. The mortgage in its terms provides for payments to start on it September 1, 1939, with a one month overdue payment stated as constituting default and an election granted the mortgagee to accelerate the total upon default. No payment had been made when the bill was filed October 12, 1939. The mortgage, even without its terms, was in default due to Henderson's failure to complete the building or to make any further progress with its construction. See 19 R.C.L. 168 (p. 394); Jones on Mortgages, 8th ed. Vol. 1, 462 (p. 601).

The next question necessary to consider is whether the second "draw" was authorized distributed by Henderson so as to make the payments thereon by Guaranty Corporation equivalent to payments by the corporation to Henderson. There can be no question but that payments by the corporation to the third persons after authorization by Henderson were the same as though it made the payments, acting as appellant's agent, to the mortgagor himself. See Wiltsie on Motrgage Foreclosure, 5th ed., Vol. 1, 96 (p. 179).

Henderson testified no such verbal authority was given and Peabody, of Guaranty Corporation, testified that it was. One master found in effect that no authority was given and the other master found as a fact that such authority was given. The final decree makes no finding on this point. The evidence, other than that already referred to, clearly shows that Henderson *knew of* the disbursement of the second "draw" and made no objection to it, and further, that Henderson himself took a check in the sum of $15 from the corporation for the purpose of getting a water meter installed on the premises, knowing at

the time that this sum was coming as a part of the disbursement of the second "draw." Under these circumstances it would be hard to sustain Henderson's position without some further showing on his part. The only conclusion tenable is that Henderson did give verbal authorization for the disbursement of the second "draw," or at least acquiesced in it to the extent of now being estopped from denying it.

The dismissal of appellant's bill was error and the final decree should have granted appellant foreclosure in the amount of those advances actually proved to have been made to and at the direction of Henderson, with interest.

The other question here concerns the dismissal, without prejudice, of the cross-bill of defendant Maule Industries. The cross-bill alleged a lien for materials furnished in the sum of $734.76. The final decree finds that "MAULE INDUSTRIES did not comply with the lien law in serving proper notice on the owner of the building at the time when the material was furnished or within the time required by law."

In contending that it did comply with the lien law, Maule Industries first asserts that it made its contract directly with Henderson, the owner, so as to take it without the requirements of Sec. 4, c. 17097, Acts of 1935. Though there is some conflict in the testimony, there is sufficient evidence to support the chancellor's finding that Maule Industries did not have a contract with Henderson, but that its contract was with the contractor Church.

But the further assertion is made that even though the contract was with Church, Maule Industries complied with the lien statutes so as to entitle it to a lien for the unpaid balance of their account. Maule In-

dustries filed a claim of lien and served a copy thereof on Henderson in accordance with Chapter 17097 *supra*, but did not file a notice of intention to claim a lien as required by Section 4, of that Chapter. A materialman's lien may be valid, without compliance with Section 4, to the extent, as set out in Section 2, of the amount of the contract price remaining with the owner unpaid to the contractor. See Le Roy v. Reynolds, 141 Fla. 586, 193 So. 843. There is no question in the record but that the full contract price was never paid and so to the limit of that balance remaining unpaid, Maule Industries has a valid and enforceable lien against the property and the dismissal of their cross-bill was error. The contention that there is no proof of delivery of the materials to the premises of construction as required by Sec. 1, c. 17097, *supra*, is without merit. There is ample uncontradicted proof that Henderson has always admitted the account due Maule Industries, has never denied it, and there is no suggestion anywhere in the record of fraud or misappropriation of materials. There is no question of priority of liens involved.

The decree below should be reversed and a decree entered granting the relief sought in both the appellant's bill and the appellee's cross-bill.

So ordered.

BROWN, C. J., WHITFIELD, BUFORD, and ADAMS, J. J., concur.

### ON REHEARING

PER CURIAM.—This cause having again been submitted to the Court upon the transcript of the record of the final decree herein, and the briefs and argument of counsel for respective parties on rehearing granted, and the record having been again seen and inspected,

and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in said judgment it is, therefore, considered, ordered and adjudged by the Court that the Court adhere to its opinion and judgment filed in this cause on December 5, 1941.

So ordered.

BROWN, C. J., WHITFIELD, BUFORD and ADAMS, J. J., concur.