123 So.2d 289 (1960)
Wanda Louise SIMPSON, a widow, Appellant,
v.
Ethel May SIMPSON, Appellee.
No. 1756.
District Court of Appeal of Florida. Second District.
September 7, 1960.
Rehearing Denied October 7, 1960.
*290 Joseph W. Bradham, Jr., of Ramseur & Bradham, St. Petersburg, for appellant.
Thomas V. Kiernan, St. Petersburg, for appellee.
ALLEN, Chief Judge.
This is the second time the parties in the present suit have been before this court. In the first case the mortgagee, Ethel Mae Simpson, had filed her claim for $10,000 against the Estate of M.C. Simpson by reason of a note and mortgage given by the deceased. No objections to the claim were raised. The estate had sufficient funds to satisfy the claim but after the time for objections had passed, Ethel May Simpson withdrew her claim stating that she would enforce her mortgage lien against the property and would waive all right of a deficiency claim against the estate. See In re Simpson's Estate, Fla.App., 1959, 113 So.2d 766.
M.C. Simpson, then a single man, executed and delivered to his mother, Ethel May Simpson, his promissory note payable on demand in the principal sum of $10,000 and as security for this note executed to his mother a mortgage on his home which he owned. The mortgage was recorded on December 2, 1953.
At the time the note and mortgage were executed, the mother had not advanced any of the $10,000 but the parties had agreed that the money would be made available upon request.
On December 7, 1956, M.C. Simpson married the appellant, Wanda Louise Simpson, and the parties soon thereafter established the home owned by M.C. Simpson as their homestead.
On January 2, 1957, M.C. Simpson requested his mother to pay over to him the sum of $10,000, which she did. Wanda Louise Simpson never joined in the note and mortgage and also at this time the mother, Ethel May Simpson, was aware of the fact that the property was now homestead property.
M.C. Simpson died on May 7, 1957, survived by his widow, the appellant, and two children by a former marriage.
The lower court found that the mortgage was a valid claim against the homestead property and entered a final decree of foreclosure in favor of the mortgage holder. This apparently is a case of first impression in Florida.
The appellee insists that the mortgage was for future advances valid at the time the mortgage was recorded, which was prior to the marriage of the mortgagor.
The appellant contends that there was no lien on the property until after the $10,000 was paid over to the mortgagor at his request, which was subsequent to his marriage to the appellant.
Section 697.04, Florida Statutes, F.S.A., provides:
"(1) Hereafter, any mortgage or other instrument given for the purpose of creating a lien on real or personal property, or both, including agricultural, horticultural, or fruit crops, planted, growing, or to be planted, grown, or raised, to secure agricultural loans, or loans of any other character, may secure not only existing indebtedness but also such future advances, whether obligatory or otherwise, as are made within ten years from the date *291 thereof, to the same extent as if such future advances were made on the date of the execution of such mortgage or other instrument, although there may be no indebtedness outstanding at the time any advance is made. Such lien, as to third persons without actual notice thereof, shall be valid as to all such indebtedness and future advances from the time the mortgage or other instrument is filed for record as provided by law. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed a maximum principal amount which must be specified in such mortgage or other instrument, plus interest thereon, and any disbursements made for the payment of taxes, levies, or insurance on the property covered by the lien, with interest on such disbursements. This section shall not apply to any mortgages, shipping contracts, or other instruments made and given by naval stores operators and producers to secure existing loans and future advances by naval stores factors.
"(2) As against the rights of creditors or subsequent purchasers for a valuable consideration, actual notice or record notice of advances to be made at the option of the lender, under the terms of such mortgage or other instrument, shall be valid only as to such advances as are to be made within ten years from the date of such mortgage or other instrument; provided that this section shall not apply to any mortgages, shipping contracts, or other instruments made and given by naval stores operators and producers to secure existing loans and future advances by naval stores factors.
"(3) Any such mortgage or other instrument shall be prior in dignity to all subsequent encumbrances, including statutory liens, except landlords' liens."
Courts and text writers have expressed a diversity of opinion on the question of the validity of mortgages to secure future advances, and as to the rights of mortgagees under such mortgages against subsequent purchasers and incumbrancers. Although formerly such mortgages were looked upon with disdain, their validity is now fully recognized and established. In the United States the weight of authority supports mortgages made in good faith for the purpose of securing future debts or future obligations as creating liens from the time the debts thereunder accrue except where local law prohibits. Thompson on Real Property, Vol. 9, section 4747, (1958 Replacement).
The cases are not harmonious, however, on the issues involving the necessity that the advance be obligatory, whether the mortgage itself must indicate the future advance or the extent thereof and priorities as respects third parties. The cases in Florida have not always consistently followed the same view. In Guaranty Title & Trust Co. v. Thompson, 1927, 93 Fla. 983, 113 So. 117, 120, the court observed:
"The question now under consideration should not be confused with a determination of the priorities between the statutory lien of a materialman or laborer, on the one hand, and a mortgage to secure future advances on the other (see Flynn-Harris-Bullard Co. v. Johnson, 90 Fla. 654, 107 So. 358; Griffith v. Hulion, 90 Fla. 582, 107 So. 354; Jones on Mortgages (7th Ed.) § 373); nor between a statutory lien of the character stated, on the one hand, and on the other a previously recorded mortgage executed to secure the payment of a loan or other indebtedness made or created prior to or contemporaneously with the execution of the mortgage, the consideration for which mortgage, by agreement of the parties, is temporarily retained, wholly or in part, by the mortgagee, but is actually and bona fide disbursed or paid over to the mortgagor at a time subsequently to *292 the time when the materialman's lien attached. In those cases, the general rule is that such a mortgage takes priority as a lien from the date of its record, and not from the date of the disbursements by the mortgagee to the mortgagor for the full amount of the indebtedness actually and in good faith incurred under and secured by the mortgage, not exceeding, however, the maximum amount the mortgagee is obligated to loan or advance by the terms of the mortgage, and of which the recorded mortgage affords constructive notice. Such mortgage is a potential lien for the full amount the mortgagee is obligated to advance under its terms. (Citations Omitted)."
The court in Bullard v. Fender, 140 Fla. 448, 192 So. 167, 172, quoted with approval the following textual matter found in Jones on Mortgages, section 457, Vol. 1, 8th Ed.:
"`Priority of recorded mortgage expressed to cover future advances.  The rule that a recorded mortgage expressed to cover future advances has priority in all cases over subsequent conveyances and incumbrances, has full support in recent discussions, and must now be regarded as a settled rule of law. Notwithstanding all the distinctions and refinements which have been introduced into the law on this subject by the many conflicting adjudications upon it, there is strong reason and authority for the rule that a mortgage to secure future advances, which on its face gives information enough as to the extent and purpose of the contract, so that any one interested may by ordinary diligence ascertain the extent of the incumbrance, whether the extent of the contemplated advances be limited or not, and whether the mortgagee be bound to make the advances or not, will prevail over the supervening claims of purchasers or creditors, as to all advances made within the terms of such mortgage, whether made before or after the claims of such purchasers or creditors arose, or before or after the mortgagee had notice of them. If the mortgage contains enough to show a contract between the parties, that it is to stand as a security to the mortgagee for such indebtedness as may arise from the future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and if he fails to make it he is not entitled to protection as a bona fide purchaser. Such a mortgage is considered as good against subsequent incumbrances to the full amount of the advances provided for, or even verbally agreed for, and the mortgagee is held to have a right to rely upon it, and to make such advances without regard to what other incumbrances may afterward have been put upon the property.' Jones on Mortgages, Sec. 457, Vol. 1, 8th Ed."
A provision in a mortgage that it covered future advances was held to be valid, citing Bullard v. Fender, supra, although the scope of such a provision was said to be limited by section 697.04, Florida Statutes, F.S.A. Downing v. First National Bank of Lake City, Fla. 1955, 81 So.2d 486.
After a review of the early cases, the text writer in 19 R.C.L., Mortgages, section 211, concluded that where the mortgagee is bound by his contract with the mortgagor to make advances in the future, or where the right to decline depends on facts or agreement dehors the instrument, and which may be the subject of dispute or contention, he will take precedence over any subsequent incumbrance given by the mortgagor, although he may have actual notice of such incumbrance at the time the advance is made. The text also states that many jurisdictions adopted the view that a mortgage to secure future advances, which on its face gives information as to the extent and purpose of the contract, so that a purchaser or junior creditor may by an inspection of the record, and by ordinary diligence and common prudence, ascertain the extent of the incumbrance, will prevail *293 over the supervening claim of such purchaser or creditor as to all advances made by the mortgagee within the terms of such mortgage, although made with notice of such subsequent incumbrance.
In 36 Am.Jur., Mortgages, section 82, the text writer states:
"The rule generally supported is that it is not essential to the validity of a mortgage to secure future advances that the mortgage disclose such purpose on the face thereof. This is particularly true as to the validity of such a mortgage as between the parties thereto. The rule has even been held to prevail where the mortgage purports to be for a present loan. A similar result has been reached as against owners of interests subsequently acquired, who are not prejudiced by such absence of disclosure. In this connection, it has been declared not to be inequitable to give effect to a mortgage to secure future advances, which does not disclose such purpose on its face, where the mortgage is otherwise fair and where it gives such information that by an inspection of the record and by the exercise of common prudence and ordinary diligence, the extent of the encumbrance may be ascertained. Of course, the omission to state the object subjects the mortgage to suspicion and the mortgagee to strict proof."
The general rule is stated in Annotation 5 A.L.R. 399, that a mortgage for future advances becomes an effective lien from the time of its execution, or as to subsequent purchasers and encumbrancers, from the time of its recordation, rather than from the time when each advance is made, where the making of the advances is obligatory upon and not merely optional with the mortgagee. Numerous cases are cited in support of this proposition. See also 41 C.J., section 465, page 525; and 59 C.J.S. Mortgages § 230.
In the instant case the mortgage indenture provided:
"* * * That the said Mortgagor, for and in consideration of the sum of Ten Thousand Dollars, to him in hand paid by the said Mortgagee, the receipt whereof is hereby acknowledged, has granted * * *."
It is also noted that in the stipulation of fact, upon which this case was decided in the lower court, the parties stated:
"That at the time of the execution of said note and mortgage, no part of the Ten Thousand Dollars ($10,000.00) was paid or delivered to the said M.C. Simpson, but it was agreed by and between the plaintiff and M.C. Simpson, that the plaintiff should pay and deliver the Ten Thousand Dollars ($10,000.00) to him upon his request or demand for the $10,000.00."
As to third persons the recording of the mortgage was notice that the $10,000 was already advanced or to be advanced and as between the parties, the mortgagee admits that she was bound to advance the money upon demand by the mortgagor.
The novel or unusual intervening factor of the property acquiring homestead status prior to the advancement and the effect thereof appears to present a problem that has not been discussed by the courts of this state. A somewhat similar problem is discussed in Pasco v. Harley, 73 Fla. 819, 75 So. 30, 31. In the Pasco case a bank obtained a judgment on November 15, 1915, against James T. Harley for $5,032.24 principal and interest, and $250.00 attorney fees on certain promissory notes given by Harley to the bank. On December 1, 1915, execution issues on the judgment and was levied on the real and personal property of Harley. The property was advertised to be sold on January 3, 1916, but on December 24, 1915, Harley delivered to the sheriff an affidavit stating that he is the head of a family and resides on a portion of the land levied upon and claimed his homestead exemption *294 therein plus an exemption of $1,000 on his personal property. The record disclosed that Harley's real and personal property had been attached on January 28, 1915, when the action was originally instituted and that Harley was single at that time and also at the time the judgment was entered on November 15, 1915, and at the time of the levy of execution on December 1, 1915. Harley was married on December 15, 1915, and thus the issue presented to the court was whether the right to homestead exemptions is superior to or subject to the liens impressed upon the property by the rendition of the judgment and the levy of the execution issued thereon before the acquisition of the right to homestead exemptions in the property.
The court observed that although the provisions of the homestead laws should be carried out in the liberal and beneficent spirit in which they were enacted, at the same time great care should be taken to prevent them from becoming the instrument of fraud. In disallowing the homestead exemptions, the court stated:
"Where judgment and execution liens upon a debtor's property are obtained by a creditor in enforcing payment of the debtor's promissory notes at a time when the debtor was not the head of a family and consequently not entitled to homestead exemptions, the debtor, upon subsequently becoming the head of a family by marriage, is not entitled to homestead exemptions in the property on which the statutory judgment and execution liens already exist, to the exclusion of the pre-existing liens."
This view was followed in First Nat. Bank of Chipley v. Peel, 107 Fla. 413, 145 So. 177, wherein the court held that a statutory lien is as binding as a judgment; that there is no difference in principle between a mortgage and statutory lien for one is as binding as the other; and that the subject judgment became a lien on the land on the date of its rendition, and that lien could not be cancelled by the attempted conversion of the property into a homestead after the lien attached. The court similarly held in Porter-Mallard Co., et al. v. Dugger, 117 Fla. 137, 157 So. 429, that land which at the time of purchase by judgment debtor had no house upon it could not be claimed as homestead so as to prevent prior recorded judgment from attaching to it, even though the debtor had made preparations for building and moving into a home thereon. For cases from other jurisdictions which have adopted this view see Annotation 110 A.L.R. 883.
The distinction between a mortgage executed by both husband and wife upon an existing homestead and one where the homestead was declared subsequent to the execution of a mortgage is that in the instance of a pre-existing homestead the mortgage is an express encumbrance of the homestead interest, assuming the requirements of the homestead laws have been met, the homestead being thereby dedicated to the payment of the debt and being subject to the continued existence of the debt as to either of the parties to the mortgage, while in the case of a mortgage made prior to the homestead declaration, the title as it then stands continues to be subject to the existing mortgage even though a homestead status subsequently attaches. It has been held that the obligation of contract would be violated by holding that a homestead exemption was effective as against a prior deed of trust or mortgage and this seems to be the general view of the courts. The rule that a mortgage, deed of trust, or purchase money or vendor's lien is not subject, or subordinate, to rights arising through the subsequent creation of a homestead has been applied in numerous cases which are collected and discussed in Annotation 123 A.L.R. 427.
In Ashdown Hardware Co. v. Hughes, 1954, 223 Ark. 541, 267 S.W.2d 294, the court cited the various authorities previously discussed herein and held that a mortgage for future advances becomes an effective lien from the time of its execution and *295 recordation rather than from the time when each advance is made, where the making of the advances is obligatory upon and not merely optional with the mortgagee notwithstanding the fact that intervening claims have been filed against the property.
The appellant at the time of her marriage to M.C. Simpson and their move to their home was confronted with a homestead having thereon a recorded mortgage of $10,000 with an obligation on the part of Ethel May Simpson to pay $10,000 to M.C. Simpson on demand, which she subsequently did, thus the consideration would relate back to the time of the recording of the mortgage and become a valid lien against the homestead.
The lower court was correct in his decree and is affirmed.
Affirmed.
SHANNON, J., and SAULS, RICHARD, Associate Judge, concur.