SMITH, Judge.
Appellants-defendants, Silver Waters Corporation, Louise S. Chapman, Richard A. Nagle and First Federal Savings and Loan Association of Eustis, appeal from a final decree in which the trial court decreed that the lien of a mortgage held by First Federal Savings and Loan Association of Eustis was inferior to the lien of two mortgages held by the appellees-plaintiffs, Richard and Mary Valda Murphy. Also appealed is the trial court’s denial of a counterclaim for damages for faulty construction brought against the Murphys by appellants, Silver Waters Corporation and Louise Chapman.
For purposes of this opinion Richard L. Murphy and Mary Valda Murphy, plaintiffs below, will be referred to as the Murphys; the appellant-defendants will be referred to as the Nagles, Chapman, Corporation and First Federal.
Before considering the points on appeal it becomes necessary to journey through the maze of various and sundry dealings between the parties which ultimately resulted in the foreclosure action by the Murphys. This is no small task.
The pleadings show the Murphys filed a complaint against Chapman, the Nagles, Corporation, and First Federal and numerous other parties praying for foreclosure of two mortgages alleged to be superior to the interest of any of the defendants. The answers of the defendants show First Federal denied the superiority of the two Murphy mortgages and that the Corporation, Chapman and the Nagles denied the validity of the Murphy mortgages. In addition Chapman and Corporation counterclaimed seeking declaratory relief, cancellation of one of the Murphy mortgages, an accounting and damages from the Murphys. The prayer for damages was based upon allegations of faulty construction of an apartment building which was part of the mortgaged property.
The facts, although complicated, are not in material dispute. Chapman, the Mur-phys and the Nagles decided to enter into a joint venture by building a cooperative apartment at an estimated cost of $110,000 on certain land owned by them. Pursuant to this plan they obtained from First Federal a loan commitment for $60,000 and executed their mortgage for that amount to First Federal. This mortgage, which was in the form of a present debt, was recorded January 30, 1961. Simultaneously with the execution of the mortgage Chapman, the Nagles and the Murphys signed a “Construction Loan Statement” which set out the conditions upon which First Federal would advance the $60,000. This “Construction Loan Statement”, although it is not spelled out therein, required the parties to complete some $50,000 of lien-free construction before First Federal was to advance any money.
Chapman, the Nagles and the Murphys then embarked upon a series of agreements *899 and mortgages among themselves directed toward providing the first $50,000 for construction. This was attempted by the execution of an “indemnity” agreement which provided Murphy, who was a contractor, would advance the $50,000 necessary to obtain the First Federal commitment. Chapman and the Nagles agreed to indemnify and reimburse Murphy for the amount which his actual investment in the construction costs should exceed his percentage interest in the project.
In connection with the above indemnity agreement Chapman, and the Nagles executed their notes and a mortgage in the total amount of $37,000 to the Murphys. This mortgage which provided it was “subject to mortgage of record” was recorded some three months after the First Federal mortgage and for convenience sake will be referred to as Murphys’ mortgage number one. It is this mortgage appellants asked to be cancelled.
And then the plot began to thicken' — the parties fell out, construction halted and construction creditors began to bang on the door of Murphy. This brings us to a discussion of the circumstances surrounding what we shall refer to as Murphys’ mortgage number two. Chapman agreed to buy out Murphy’s interest for $39,030.74 of which $20,138.24 represented Murphy’s actual cash expenditures on the construction. In addition Chapman agreed to “liquidate, satisfy, pay and discharge all accounts due to contractors, lienors, materialmen, and others incurred in and about the construction of the building.” Chapman paid the Murphys $10,000 in cash and gave them a note and mortgage “subject to mortgages of record” which was recorded one year after the recordation of First Federal’s mortgage. After the execution of the Murphy mortgage number two the Mur-phys objected to First Federal making any further disbursals under the mortgage for advances unless all lienors were paid. First Federal responded by obtaining an agreement from Chapman and her successors in interest assuming and agreeing to pay its mortgage and releasing the Mur-phys from any personal liability thereon. Thereupon First Federal disbursed practically all of the remaining sum represented by the note and mortgage in payment of construction costs. Thereafter numerous other parties filed suit against Murphys for construction costs contracted for by the Murphys. These parties represent the numerous other defendants referred to here as “creditors.”
Chapman and the Corporation urged that Murphy mortgage number one be cancelled as being invalid. The chancellor, however, concluded that it was a valid and subsisting first mortgage lien for the use and benefit of unpaid lienors and creditors in the amount of $9,832.84 and was superior to the interest of all the defendants. We cannot concur with the chancellor and hold that the mortgage in question should have been cancelled as invalid.
There was no consideration for Murphy mortgage number one except the collateral indemnity agreement of the Na-gles and Chapman to secure reimbursement to the Murphys for “an amount and to such an extent that their outlay of cash and expenditures exceeded their percentage interest.” When the Murphys sold their interest to Chapman they received their “full outlay of cash and expenditures” in the form of the cash payment and Murphy mortgage number two along with Chapman’s agreement to pay listed unpaid construction costs. Since no funds were advanced by the Murphys pursuant to mortgage number one there are no sums to be reimbursed to them thereunder and there being no debt there can be no valid mortgage lien.
We can find no pleading in support of, nor facts in the record to sustain the chancellor’s finding that the Murphy mortgage number one created a lien for the ‘‘use and benefit of unpaid lienors and creditors.” None of these creditors plead subrogation to the rights under the mort *900 gage and- there are no facts to support such a finding. That part of the chancellor’s order is reversed with directions that the mortgage be cancelled.
Having disposed of any questions relative to Murphy mortgage number one we now decide whether the court erred in finding the lien of Murphy mortgage number two was superior to that of the commitment mortgage of First Federal as to all but the amount actually advanced thereon when First Federal was notified of the Murphys’ encumbrance. It is not disputed that some $17,000 was due on the Murphy mortgage number two and that payments were in default at the time the foreclosure suit was brought. We find that the mortgage of First Federal falls squarely within the protection of Fla.Stat. 697.04, F.S.A. and that its lien thereunder was entitled to "prior in dignity to all subsequent encumbrances.” Fla.Stat. 697.04(3), F.S.A. On this point we reverse.
The pertinent parts of the above statute as it existed in 1961 provided:
“Any mortgage or other instrument given for the purpose of creating a lien on real or personal property, or both, * * * may secure not only existing indebtedness but also such future ad-vanees, whether obligatory or otherwise, as are made within twenty (20) years from the date thereof, to the same extent as if such future advances were made on the date of the execution of such mortgage or other instrument, although there may be no indebtedness outstanding at the time any advance is made. Such lien, as to third persons without actual notice thereof, shall be valid as to all such indebtedness and future advances from the time the mortgage or other instrument is filed for record as provided by law. The total amount of indebtedness that may be so- secured may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed, a maximum principal-amount which must be specified in such mortgage. * * * ” (Emphasis supplied)
The second section of the statute distinguishes between “third persons without actual notice thereof” and “creditors or subsequent purchasers for a valuable consideration” who have actual or record notice of advances to be made at the option of the lender. As to the latter the advances are valid if made within 20 years from the date of the mortgage. As to the former they are valid only if advanced within 20 years of the recordation of the mortgages. The Murphys certainly had actual notice of the First Federal mortgage, having both been parties thereto.
Section- (3) of the statute provides:
“Any such mortgage or other instrument shall be prior in dignity to all subsequent encumbrances, including statutory liens, except landlords’ liens.”
The above Florida statute is unique in the specificity with which it spells out the protection accorded lenders whose security instruments come within its provisions. Its intent seems to be to preclude application of the common law distinction long drawn between mortgages of this kind in which the advances are “obligatory” and those in which they are merely “optional.” The chancellor below evidently applied the common law majority rule that where the advances are optional the lender is protected only as to such amounts actually advanced to the point notice of a subsequent encumbrance is conveyed to the mortgagee. Nearly all jurisdictions subordinate optional advances made after actual notice of an encumbrance. I Jones on Mortgages, § 453 (8th Ed.1928). It has been settled in Florida that where advances under the mortgage are obligatory the lender is protected for the full amount of the advances even though actually made subsequent to intervening encumbrances. Simpson v. Simpson, Fla.App.1960, 123 So.2d 289. We find no Florida case, however, dealing directly *901 with this question when the advances under the mortgage are optional with the lender-mortgagee since the protection of this statute was extended in 1953 beyond agricultural loans to cover “loans of any other character.” Mortgages for Future Advances Vol. 15, U. of F.L.R., 565.
The wording of the Florida Statute providing that advances qualifying thereunder “whether obligatory or otherwise” are within its protection precludes the drawing in Florida of any distinction between advances which are obligatory or optional. This is further substantiated by the fact that the legislature in 1963 amended the statute, obviously in an attempt to exclude any such question, changing the words “whether obligatory or otherwise” to read “whether obligatory or optional.” The 1963 version provides whether such advances are “obligatory or optional.”
The advances made by First Federal subsequent to the Murphy mortgages related back to the time of the recording of the mortgage and hence the total amount evidenced by that mortgage is prior and superior to the Murphy mortgages. The wording of the statute defies any other conclusion and the court was in error adjudicating that the priority of First Federal’s lien extended only to the $3,099.00 actually advanced before notice of the Murphy encumbrances and that the balance advanced was inferior to the Murphy lien.
We turn now to the points on appeal relating to the denial of the counterclaim against the Murphys for faulty construction damages and'the excessiveness of the allowance of attorneys fees. On these points we hold that the appellants have failed to demonstrate reversible error and that the record contains substantial competent evidence to uphold the chancellor on these points. At no time prior to the filing of her counterclaim did Chapman complain of faulty construction. The record shows that prior to buying out Murphy’s interest Chapman personally and with the aid of a professional architect thoroughly examined the building. The appellants were' estop-ped from asserting any claim of faulty construction since Corporation stood as in the shoes of Mrs. Chapman and its rights can be no greater than hers. See Hendrick v. Stark, 99 Fla. 277, 126 So. 293; Rood Company v. Board of Public Instruction, Fla., 102 So.2d 139, and Toffel v. Baugher, Fla.App., 111 So.2d 290.
The appellants also attack that part of the decree setting the amount due and payable on the Murphy mortgage number two in that it failed to allow for an $800 credit which the Murphys admitted was proper. Appellees do not contest this and the record supports appellants’ claim of Murphys’ admission. We find that part of the decree excessive in the amount of $800 on the principal which requires a recomputation of interest allowed in the decree.
The decree is affirmed in part and reversed in part.
SHANNON, Acting C. J., and TEDDER, GEORGE W., Jr., Associate Judge, concur.