306 So.2d 133 (1975)
INDUSTRIAL SUPPLY CORPORATION and Fennell & Associates, Inc., Appellants,
v.
John W. BRICKER et al., Appellees.
No. 74-227.
District Court of Appeal of Florida, Second District.
January 8, 1975.
Rehearing Denied February 4, 1975.
*134 Thomas F. Icard, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellant Industrial Supply Corp.
Arthur R. Louv of Young, Turnbull & Linscott, Orlando, for appellant Fennell & Associates, Inc.
George F. Meehan of Harris, Barrett & Dew, St. Petersburg, for appellee.
GRIMES, Judge.
This appeal is from a judgment of mortgage foreclosure in which it was held that the mortgage had priority over the competing claims of mechanics' liens.
The mortgage was executed by Sea Terra, Inc. to appellees. Contemporaneous with the execution of the mortgage and the note secured thereby, Sea Terra, Inc. entered *135 into a loan agreement whereby appellees agreed to lend the sum of $695,000 to Sea Terra, Inc. during the course of construction of an apartment complex. The mortgage was recorded prior to construction, but the construction loan agreement was not recorded. Thereafter construction commenced upon the mortgaged property with the appellant, Fennell & Associates, Inc., being the general contractor and appellant, Industrial Supply Corporation, being a materialman. The appellants complied with the requirements of the Mechanics' Lien Law and perfected lien interests in the subject property which dated from the recording of the owner's notice of commencement.
When Sea Terra, Inc. failed to make payments under the note and mortgage, the appellees brought suit to foreclose. Appellants unsuccessfully joined issue with the appellees claiming priority over the mortgage to the extent that monies were not actually distributed prior to the filing of the notice of commencement. The appellants contend that appellees' mortgage was not entitled to priority because of its failure to meet the requirements of Fla. Stat. § 697.04 (1971).
The obligation secured by a mortgage for future advances is the single binding promise of the mortgagor made at the outset of the transaction to repay all advances within the scope of the agreement which are actually made then and at a later time. As Professor Osborne has noted in his treatise on mortgages, a future advances mortgage may be "cast into one or the other of two forms."
"(1) It may name a certain total sum as a present loan although in truth that amount, by extrinsic agreement which may be oral, includes advances to be made later on. Or (2) it may state that it secures advances to be made in the future but leave the amounts, and sometimes their character, indefinite." G. Osborne, Handbook on the Law of Mortgages at 182 (1970).
A mortgage securing a construction loan such as that in the instant case clearly falls within the definition of a mortgage for future advances. See IV American Law of Property § 16.70 (1952); 3 Stetson Intra. L.Rev., No. 2, 105, 124 (1972).
In the absence of statute, mortgages securing future advances have generally been upheld against the claims of subsequent lienors even with respect to advances made after notice of the liens, providing the mortgagee, by the terms of his agreement with the mortgagor, was obligated to make the advances. See 80 A.L.R.2d 179, 191. The Florida Supreme Court announced support for this view in a case arising prior to the passage of Fla. Stat. § 697.04. Guaranty Title & Trust Co. v. Thompson, 1927, 93 Fla. 983, 113 So. 117. On the other hand, where the agreement gives the mortgagee the option of making future advances, most courts give priority to the claims of intervening lienors as to all payments made by the mortgagee after notice of the liens. IV American Law of Property § 16.73 (1952).
Section 697.04 originally pertained only to agricultural loans. In 1953, the statute was amended to read as follows:
"697.04 Future advances may be secured. 
"(1) Hereafter, any mortgage or other instrument given for the purpose of creating a lien on real or personal property, or both, ... may secure not only existing indebtedness but also such future advances, whether obligatory or otherwise, as are made within ten years from the date thereof, to the same extent as if such future advances were made on the date of the execution of such mortgage or other instrument, although there may be no indebtedness outstanding at the time any advance is made... . The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed a maximum principal *136 amount which must be specified in such mortgage or other instrument... .
"(2) As against the rights of creditors or subsequent purchasers for a valuable consideration, actual notice or record notice of advances to be made at the option of the lender, under the terms of such mortgage or other instrument, shall be valid only as to such advances as are to be made within ten years from the date of such mortgage or other instrument; .. .
"(3) Any such mortgage or other instrument shall be prior in dignity to all subsequent encumbrances, including statutory liens, except landlords' liens."
Thereafter, this court in Simpson v. Simpson, Fla.App.2d, 1960, 123 So.2d 289, held that a $10,000 mortgage in the form of a present debt but which was actually an obligatory future advances mortgage by agreement of the parties was effective over the subsequently arising homestead status of the mortgaged property. Pointing out that the recording of the mortgage, even in present form, was notice to third parties that $10,000 was already advanced or to be advanced, the court also cited in part the following quotation from 36 Am. Jur., Mortgages, § 82:
"`The rule generally supported is that it is not essential to the validity of a mortgage to secure future advances that the mortgage disclose such purpose on the face thereof. This is particularly true as to the validity of such a mortgage as between the parties thereto. The rule has even been held to prevail where the mortgage purports to be for a present loan. A similar result has been reached as against owners of interests subsequently acquired, who are not prejudiced by such absence of disclosure...."
The statute was amended again in 1961 but only for the purpose of extending the time during which mortgages for future advances may be secured from ten to twenty years. This court again addressed itself to the statute as it existed in 1961 in the case of Silver Waters Corporation v. Murphy, Fla.App.2d, 1965, 177 So.2d 897. There, the mortgage was in the form of a present debt but simultaneously with its execution the parties signed the construction loan statement setting forth the conditions upon which First Federal Savings and Loan Association of Eustis would advance the funds to the mortgagor. The court held that the mortgage fell squarely within the protection of § 697.04 such that its lien was prior in dignity to subsequent mechanics' liens even with respect to advances made by the mortgagee subsequent to notice of mechanics' liens. While appearing to treat that particular loan agreement as providing for optional advances, the court held that it made no difference because the statute specified that advances qualifying thereunder, "whether obligatory or otherwise," were within its protection. The court further noted that in 1963 the statute was amended again in attempt to exclude any such question by changing the pertinent language to read "whether obligatory or optional." In upholding the mortgage for future advances, the court necessarily held that the fact that it was in the form of a present debt did not affect its priority.
When the statute was amended in 1963, another change was made which relates directly to the instant case. Thus, subsection (1) was amended to read:
"(1) Hereafter, any mortgage or other instrument given for the purpose of creating a lien on real or personal property, or both, ... may, and when so expressed therein shall, secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of the lender, or otherwise, as are made within twenty years from the date thereof, to the same extent as if such future *137 advances were made on the date of the execution of such mortgage or other instrument... ." (Emphasis supplied.)
Appellants argue that the addition of the italicized language means that in order to be valid as a mortgage to secure future advances the instrument must now expressly say so on its face. We agree. At the time of the 1963 amendment, the legislature was presumed to know the construction placed upon the statute in Simpson and Silver Waters. By amending the statute in this manner, the legislature clearly manifested an intent that the mortgage itself make some reference which would indicate to the public upon recording that it was intended to secure future advances. As stated by the Florida Supreme Court in Arnold v. Shumpert, Fla. 1968, 217 So.2d 116:
"... [W]hen a statute is amended, it is presumed that the Legislature intended it to have a meaning different from that accorded to it before the amendment."
In order to decide the instant case, there are two questions which remain. The first is prompted by our interpretation that the construction loan agreement signed by Sea Terra, Inc. and the appellees was obligatory in form. It was, in fact, a commitment to periodically advance monies upon the completion of certain stages of construction. The fact that the mortgagees had the option of refusing to make the advances if Sea Terra, Inc. did not meet the conditions of the commitment did not make it an optional agreement to lend. Assuming performance by Sea Terra, Inc., the appellees would have been liable in damages for refusal to make the advances. See 80 A.L.R.2d 179, 197; 29 N.Y.U.L. Rev. 733, 736 (1954). Thus, appellees can make a reasonable argument that even assuming that their mortgage does not comply with the statute, it nevertheless should be given priority over the mechanics' liens in the manner that mortgages for obligatory future advances were given in Florida when there was no statute. However, in the passage of § 697.04 and subsequent amendments thereto, the legislature appears to have pre-empted the field of mortgages to secure future advances, at least with respect to the priorities of third persons without actual notice thereof. Though not necessary to its decision, the Supreme Court in Downing v. First National Bank of Lake City, Fla. 1955, 81 So.2d 486, did say that "Section 697.04 F.S. 1951, F.S.A., limits the scope of provisions for future advances." While the statute authorizes mortgages to secure future advances, it specifically sets forth the requirements thereof. The fact that the legislature chose to require that a reference to future advances be made on the face of the mortgage reflects a response to the contention that a mortgage for future advances in the form of a present loan may have the effect of misleading third parties. See IV American Law of Property § 16.72 (1952).
Therefore, we must now examine the mortgage itself to see if it complied with the statute. In its formal language, it appears in the form of a mortgage to secure a present debt. However, paragraph 13 of the mortgage reads as follows:
"13. It is further agreed that in the event the construction of the building to be erected on the premises hereby mortgaged is not completed in strict accordance with plans and specifications submitted to Mortgagee by December 1, 1973, or if construction shall cease before completion and shall remain abandoned for a period of fifteen days, then and in either event the entire principal sum that has been disbursed by Mortgagee shall at once become due and payable with all accrued interest thereon at the option of Mortgagee; and in such event Mortgagee at its option may enter into and upon the mortgaged premises and complete the construction of *138 building or buildings thereon, with full power and authority to make such entry and enter into such contracts as may be necessary to complete said construction; it being understood and agreed that the monies expended thereby in connection with such completion shall be added to the principal amount of said note and shall be secured by these presents, and shall be payable by the mortgagor on demand with interest at the rate specified in the note secured by this mortgage. Any construction loan agreement executed by the Mortgagor and Mortgagee in regard to construction to be placed on the real property herein described shall become a part of this mortgage, and the terms and conditions of said construction loan agreement shall be incorporated herein as if the same were set forth herein in toto." (Emphasis supplied.)
From a reading of this paragraph, there can be little doubt that the parties contemplated that construction would be carried out on the mortgaged property and that advances would likely be made during the course of construction which would be secured by the mortgage. It would have been more prudent to specifically state that this was a mortgage to secure future advances and to identify a specific construction loan agreement executed by the parties. Yet, the purpose of requiring the mortgage to refer to future advances is to give notice to parties searching the public records that such a mortgage may, in fact, cover an advance not made at the time of the execution of the mortgage. When one has notice sufficient to put him on inquiry, he is bound, for his own protection, to make the inquiry which such notice appears to direct should be made. Applefield v. Commercial Standard Insurance Co., Fla.App.2d, 1965, 176 So.2d 366. The language of paragraph 13 is sufficient to put a reasonably prudent person upon notice to inquire of the parties whether future advances had been or were intended to be made which would be covered by the mortgage.
Referring to the other requirements of the statute, the recitation of the face amount of the mortgage suffices for the statement of the maximum principal amount of the total unpaid balance to be secured. The mortgage, as foreclosed, was for an unpaid principal balance of a lesser amount. Likewise, all of the advances were made well within twenty years of the date of the mortgage.
The mortgage sufficiently complied with the statute as to give lien priority to all of the future advances, including those made subsequent to the effective date of the mechanics' liens.
Affirmed.
HOBSON, A.C.J., and BOARDMAN, J., concur.