SMITH, Judge.
Snead, prime contractor for three motel projects in Daytona Beach, appeals from a final summary judgment dismissing its claim against the institutions which lent the construction funds. As a result of a dispute between Snead and the owner, Snead filed mechanic’s liens, the lenders stopped disbursing the construction funds and construction halted. By this action Snead seeks alternatively (1) to have the lenders’ previously recorded mortgages subordinated to Snead’s liens because the mortgages did not specify that they secured future advances; and (2) to have the lenders’ un-disbursed construction funds declared as held in trust to pay for labor and materials supplied by Snead.
*519 Section 697.04, F.S.1975, provides that a mortgage lien on real property shall secure repayment not only of “existing indebtedness” but also “future advances” when that purpose is “so expressed” in the mortgage. Snead argues that an agreement for periodic disbursement of loan proceeds during construction is an agreement for “future advances” and that any purpose to secure such advances by the lien of a mortgage is ineffective unless “so expressed” explicitly by the mortgage. The notes and mortgages held by the lenders here expressed the owner’s obligation in the conventional terms of a present debt.
Contractor Snead actually knew, of course, that these lenders took and recorded their mortgages before commencement of construction in order to secure loans which were to be disbursed later in stages. Snead itself was the recipient of direct disbursements from the lenders. So, Snead’s contention essentially is that the lenders acquired no lien for those disbursements because the recorded mortgages did not contain a talismanic phrase — “security for future advances” — which would have put the world on notice of what Snead knew full well. We hold that Snead, having actual knowledge of the facts, cannot complain that the constructive knowledge afforded by the recording statute was imperfect or incomplete. Cone Bros. Constr. Co. v. Moore, 141 Fla. 420, 193 So. 288 (1940).
Moreover, the lenders’ mortgages satisfy the requirements of § 697.04, F.S. 1975. To speak of a construction loan mortgage as one securing “future advances,” and therefore subject to § 697.04, blurs a distinction carefully drawn by Mr. Justice Strum in Guaranty Title & Trust Co. v. Thompson, 93 Fla. 983, 990, 113 So. 117, 120 (1927). He referred to a mortgage securing future advances as one given to secure a loan which the mortgagee has not yet made and may never make, as in Flynn-Harris-Bullard Co. v. Johnson, 90 Fla. 654, 655, 107 So. 358, 359 (1925). There, certain turpentine producers mortgaged land, turpentine and all other products and personalty “that may be on hand at the still, on the yards, in the woods and elsewhere” to secure advances which the mortgagee might make above or to renew a $16,000 debt. The Court held in Flynn-Harris-Bullard that the mortgage did not afford a prior lien for optional advances made by the mortgagee with knowledge of a laborer’s lien intervening after the mortgage was recorded. By contrast, Mr. Justice Strum pointed out in Guaranty Title and Trust, a construction loan mortgage is given to secure a contemporaneous indebtedness for the repayment of funds “temporarily retained, wholly or in part, by the mortgagee”:
“In those cases, the general rule is that such a mortgage takes priority as a lien from the date of its record, and not from the date of the disbursements by the mortgagee to the mortgagor for the full amount of the indebtedness actually and in good faith incurred under and secured by the mortgage, not exceeding, however, the maximum amount the mortgagee is obligated to loan or advance by the terms of the mortgage, and of which the recorded mortgage affords constructive notice. Such mortgage is a potential lien for the full amount the mortgagee is obligated to advance under its terms.” (Many citations omitted.) 93 Fla. at 990-991, 113 So. at 120.
Thus, whether they were spoken of as securing “future advances,” Investors Syndicate v. Henderson, 148 Fla. 696, 6 So.2d 629 (1942), or not, Franklin Savings & Loan Co. v. Fisk, 98 Fla. 683, 124 So. 42 (1929), construction loan mortgages written in terms of a present debt, but intended to secure postponed disbursements, were held effective against liens of subsequent laborers before the 1941 Legislature enacted § 697.04.
It is evident, we believe, that the 1941 legislation was not thought necessary to validate the prior lien of a mortgage given to secure repayment of a certain loan, the disbursement of which was postponed. Rather, the legislation was intended to limit the time in which future advances could be made under the security of a mortgage, § 697.04(2), and to change the law concern- *520 iijg previously more troublesome varieties of mortgages for “future advances,” such as those under which the mortgagee has only an option, but no obligation, to make advances. Silver Waters Corp. v. Murphy, 177 So.2d 897, 900-901 (Fla.App.2d, 1965). Just as before 1941,‘it was held afterwards without aid from § 697.04 that advances upon a note and mortgage for a stated sum certain are secured by the mortgage lien:
“As to third persons the recording of the mortgage was notice that the $10,000 was already advanced or to be advanced and as between the parties, the mortgagee admits that she was bound to advance the money upon demand by the mortgagor.” Simpson v. Simpson, 123 So.2d 289, 293 (Fla.App.2d, 1960) (emphasis added).
Snead points out that the 1963 Legislature changed the operative words of § 697.-04 to provide that mortgages “may, and when so expressed therein shall, secure not only existing indebtedness, but also such future advances . . . .” (emphasis added). Ch. 63 — 212, § 3, Fla.Laws. That amendment is the key to Snead’s argument that an explicit statement is now necessary to secure future advances. But, given the virtually unchallenged utility and precedence of construction loan mortgages established over the years with and without enabling legislation, we decline to attribute to the 1963 Legislature any purpose to require that such mortgages “express” more particularly than before their purpose to secure “future advances.” The statute is satisfied if the common law would have been:
“It is not necessary that the mortgage should express on its face that it is given to secure future advances. It may be given for a specific sum, and it will then be security for a debt to that amount. This definite sum will then limit the extent of the lien. There must be some limit to the amount which the mortgage is to secure, either by express limitation or by stating generally the object of the security.” 1 Jones, Law of Mortgages of Real Property § 458 (8th ed 1928).
Snead’s case for imposing a trust on tbe undisbursed construction funds in the hands of the lenders is also unavailing. Construction is incomplete and funds are yet required for its completion. See J. G. Plumbing Serv., Inc. v. Coastal Mtg. Co., 329 So.2d 393 (Fla.App.2d, 1976). Contrast Morgen-Oswood & Assoc., Inc. v. Continental Mtg. Investors, 323 So.2d 684 (Fla.App. 4th 1976), and Fred S. Conrad Constr. Co. v. Continental Assur. Co., 215 So.2d 45 (Fla.App. 1st, 1968). The lenders here are not guilty of fraud or misrepresentation and have not gained any inequitable advantage merely by holding funds which may be necessary to complete construction.
AFFIRMED.
MILLS, Acting C. J., and DRURY, ARV-EL, Associate Judge, concur.